**IT IS ORDERED as set forth below:**



**Date: June 26, 2026**

_____
**James R. Sacca**
**U.S. Bankruptcy Court Judge**

_____

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | |
| | ) | MISCELLANEOUS |
| STANLEY J. KAKOL, JR. and | ) | PROCEEDING |
| the LAW OFFICES OF | ) | NO. 24-00502-JRS |
| STANLEY J. KAKOL, JR., LLC | ) | |
| | ) | |
| GUY A. VAN BAALEN, | ) | |
| ACTING UNITED STATES | ) | |
| TRUSTEE, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| STANLEY J. KAKOL, JR. | ) | |
| and the LAW OFFICES OF | ) | |
| STANLEY J. KAKOL, JR., LLC, | ) | |
| | ) | |
| DEFENDANTS. | ) | |

## ORDER ON COMPLAINT FOR SANCTIONS

1

This miscellaneous proceeding[1] concerns Attorney Stanley J. Kakol's ("Attorney Kakol") representation of debtors in eighteen Chapter 13 cases and one Chapter 7 case.  In these cases, Attorney Kakol's fee was paid by a prospective purchaser of property based on a prearranged agreement between Attorney Kakol and the purchaser, but the agreement was not disclosed to the Court as required by law.[2] Additionally, these nineteen cases were filed with no intention of prosecuting them other than merely filing a bankruptcy petition to stop a foreclosure.  This was done to give the purchaser who paid Attorney Kakol's fee enough time to close the sale of the property.

Attorney Kakol also made no effort to analyze the debtors' financial condition and provided no counseling to the debtors as to their rights and options to maximize the value of the properties.  This failure resulted in

---

[1] Although most of the underlying Chapter 13 cases that are the subject of this miscellaneous proceeding were assigned to other judges, these cases were reassigned to this Court for purposes of this miscellaneous proceeding.  Additionally, this miscellaneous proceeding has been assigned to this Court after consultation with the Chief Judge of the Bankruptcy Court for administrative convenience because of the similarity of the issues here with those this Court heard in *Townson v. Kakol* (*In re Day*), Ch. 13 Case No. 23-52197, 2024 Bankr. LEXIS 851, 2024 WL 1506751 (Bankr. N.D. Ga. Apr. 5, 2024).

[2] Attorney Kakol has been sanctioned numerous times by this Court for not making proper fee disclosures to the Court as required by law. In some of the cases subject to this miscellaneous proceeding, Attorney Kakol continued to make knowingly and materially false disclosures even after the United States Trustee commenced an investigation into his handling of the *Day* case, discussed in footnote 1, which involved his failure to file the required fee disclosure and also after the United States Trustee filed a motion for sanctions regarding the conduct in *Day*.  All of this will be discussed in detail below.

the potential for, if not actual, serious harm to some or all of these debtors who Attorney Kakol should have been protecting.

This miscellaneous proceeding is not Attorney Kakol's first disciplinary proceeding. Attorney Kakol has an extensive disciplinary history by this Court and the State Bar of Georgia. A summary of Attorney Kakol's disciplinary proceedings and orders is attached to this Order as Appendix A.[3] Portions of Appendix A are discussed below to provide additional context for this Order.

After serving a three-year suspension of his law license from 1998 to 2001 from the State Bar of Georgia[4] arising from nine disciplinary matters pursuant to two separate notices, Attorney Kakol was sanctioned at least eight times by this Court between 2004 and 2009. The sanctions from this Court included an order that suspended Attorney Kakol from filing cases in this Court for six months and another that limited him to filing no more than two cases per month for eighteen months. The latter case led to the State Bar of Georgia restricting Attorney Kakol's ability

---

[3] Attorney Kakol's prior disciplinary proceedings are important to the Court's consideration of the Complaint for Sanctions against him in this miscellaneous proceeding. There may be other orders sanctioning Attorney Kakol of which the Court is not aware.

[4] Attorney Kakol testified that he was suspended from 1998 to 2001 by the Georgia Bar. Apr. 1, 2026, Hearing at 11:19 AM, *In re Kakol*, Miscellaneous Proc. No. 24-00502 (Bankr. N.D. Ga.).

to practice for two years, including restrictions on signing and filing pleadings and appearing in court.

At a disciplinary hearing in this Court in 2009, Attorney Kakol admitted through counsel that he "determined that running a business of his own is beyond his capabilities and [he] is very aware of the problems he's encounter [sic] over the years and decided that it's best to go work for somebody else." Transcript of Motion to Show Cause Hearing on February 19, 2009, 4:21-25, *In re Hill*, Ch. 13 Case No. 07-67074-CRM (Bankr. N.D. Ga. Apr. 10, 2009), Dkt. No. 65.

After Attorney Kakol closed his law office, he worked as an intake attorney for a bankruptcy firm with no case or courtroom responsibility according to the terms of his two-year suspension by the State Bar of Georgia before becoming an associate with case and courtroom duties for another firm. During the brief time he was an associate for the latter firm, Attorney Kakol was sanctioned by this Court at least once.

Attorney Kakol's employment as an associate was terminated in 2015. After that, he did not practice law again for four years until he reopened a law office in 2019. By the time Attorney Kakol reopened his own law practice, the judges in this Court who had previously entered

4

the sanctions orders before 2015, discussed in Appendix A, had all retired.

The new generation of judges in this Court have likewise frequently disciplined Attorney Kakol.  From 2020 to 2026, Attorney Kakol was sanctioned at least twelve more times by this Court including one order that limited him to filing no more than fifteen Chapter 13 cases a month for three months.  Another order suspended Attorney Kakol from filing any new cases in this Court for one year.  At least two of those cases in which he was disciplined by this Court in 2024 have resulted in proceedings against him with the State Bar of Georgia which are still pending.

Attorney Kakol was sanctioned by this Court as recently as (a) June 24, 2026, for failing to advise a client of a settlement which caused the client to needlessly appear at an in-person hearing and then failing to appear at a subsequent hearing in the case and (b) earlier in 2026 for filing a bankruptcy case for two debtors during a two-year period in which those debtors were prohibited from refiling a case.

Like many of the cases for which Attorney Kakol has been previously disciplined by this Court, the cases in this miscellaneous

5

proceeding involve his knowing violations of required disclosure to the Court under Federal Rule of Bankruptcy Procedure 2016 ("Rule 2016") and his failure to review with the debtor the required Rights and Responsibilities Statement Between Chapter 13 Debtors and Their Attorneys ("Rights and Responsibilities Statement").  But like Attorney Kakol's conduct in *Day*, the cases in this miscellaneous proceeding also involve serious violations of the Georgia Rules of Professional Conduct and the Local Rules and General Orders of this Court, such as conflicts of interest, lack of diligence in the representation of debtors, and improper limitation of the scope of the representation of debtors.

In addition to Attorney Kakol's prior extensive disciplinary history, the Court has considered all matters of record in this miscellaneous proceeding, including: (a) the testimony at trial of Attorney Kakol, Angela Jones ("Jones"), and William Eakin ("Eakin"); (b) more than 100 exhibits admitted at trial; (c) the deposition transcripts of Attorney Kakol, members of his staff (Jones, Yolonda Hood ("Hood"), and Eakin), and representatives of CMNC Homes, LLC (Christopher Burrow

("Burrow") and Kyle Edwards ("Edwards"));[5] plus (d) the evidence the Court considered in the *Day* case, a similar case in which Attorney Kakol's misconduct resulted in this Court suspending him from filing further cases in this Court for one year.

Ultimately, the Court has determined the appropriate sanction is to permanently disbar Attorney Kakol from the practice of law in the Bankruptcy Court for the Northern District of Georgia and permanently prohibit his law firm, the Law Offices of Stanley J. Kakol, Jr., LLC, from filing cases and representing parties in cases in the Bankruptcy Court for the Northern District of Georgia.  In arriving at its decision, the Court has considered the facts in this miscellaneous proceeding and applied the ABA Standards for Imposing Lawyer Sanctions, including any aggravating and mitigating factors, as utilized by the Georgia Supreme Court in these types of cases.

## I.    Facts

### A. The initial Motion for Sanctions filed by the United States Trustee in *Day*

---

[5] The parties agreed to admit the deposition transcripts and the exhibits to the deposition transcripts into evidence.  *See* Apr. 1, 2026, Hearing at 10:06 AM, *In re Kakol*, Miscellaneous Proc. No. 24-00502 (Bankr. N.D. Ga.).

The United States Trustee ("UST") filed a Motion for Review and Disallowance of Attorney Fees and for Imposition of Other Sanctions in *Day* against Attorney Kakol and his law firm, the Law Offices of Stanley J. Kakol, Jr., LLC, on September 28, 2023 ("Day Sanctions Motion"). Motion for Review and Disallowance Attorney Fees and Imposition of Other Sanctions, *In re Day*, Ch. 13 Case No. 23-52197, (Bankr. N.D. Ga. Sept. 28, 2023), Dkt. No. 28. At the conclusion of the trial on the Day Sanctions Motion, the UST announced its intention to file a miscellaneous proceeding to cover other cases involving Attorney Kakol and CMNC Homes, LLC ("CMNC") which were discovered shortly before the trial in *Day*.

Based on the evidence the Court heard at the trial in *Day,* an order was entered on January 19, 2024, requiring Attorney Kakol to produce to the UST within three weeks all case files and documents for bankruptcy cases involving his firm and CMNC filed on or after December 1, 2022. Interim Order, *In re Day*, Ch. 13 Case No. 23-52197, (Bankr. N.D. Ga. Jan. 19, 2024), Dkt. No. 40. The UST had previously requested these case files a few weeks prior to the *Day* trial, but Attorney Kakol failed to respond. Attorney Kakol had likewise failed to respond when the UST

8

requested documents involving CMNC and James Day in May 2023 but instead stonewalled the UST, which necessitated the filing of the Day Sanctions Motion.  In response to the Court's order to produce files, Attorney Kakol's law firm produced client files for some of his bankruptcy cases involving CMNC to the UST on February 9, 2024.[6]

The result of the Day Sanctions Motion was that Attorney Kakol and his law firm were suspended for one year[7] from filing any new cases in the Bankruptcy Court for the Northern District of Georgia beginning on April 11, 2024.  *Townson v. Kakol* (*In re Day)*, Ch. 13 Case No. 23-52197, 2024 Bankr. LEXIS 851, 2024 WL 1506751, at *37 (Bankr. N.D. Ga. Apr. 5, 2024).  The basis of that suspension was, *inter alia*, (1) Attorney Kakol's violations of various Georgia Rules of Professional Conduct; and (2) his failure to follow applicable provisions of the Bankruptcy Code and Rules, including Rule 2016, and this Court's General Orders.  *See id.* at *16-31, *37.  This Court reserved for future

---

[6] A handful of the case files did not get produced until shortly before the trial of this miscellaneous proceeding, almost two years later. Case files were never produced for the cases of Wade Butler, Leonard Henderson, and Joshua Back.

[7] The Court believed at the time that the matters involved in this miscellaneous proceeding could be concluded within the one-year suspension. But its estimate was not correct, in part due to discovery delays, a partial government shutdown which necessitated the continuance of the trial, and other continuances for the parties to work on stipulations of fact and exhibits.

ruling any discipline on account of any potential misconduct in the cases in this miscellaneous proceeding. *Id.* at *36.

### B. The UST's Complaint for Sanctions and the debtors at issue in this miscellaneous proceeding

The UST filed a Complaint for Sanctions ("Complaint") against Attorney Kakol and the Law Offices of Stanley J. Kakol, Jr., LLC in this miscellaneous proceeding on June 17, 2024. (Compl., Dkt. No. 16). The Complaint alleged *inter alia* that Attorney Kakol's representation of twenty-two debtors involved numerous violations of the Georgia Rules of Professional Conduct; that he failed to timely file Rule 2016(b) statements and then filed materially inaccurate Rule 2016(b) statements; that he failed to comply with this Court's General Orders; and that he violated Bankruptcy Code sections such as 11 U.S.C. §§ 526 and 528. (*See id.* ¶¶ 68-87).

The UST asserted three counts in its Complaint: (1) civil penalty under 11 U.S.C. § 526(c)(5)(B); (2) exercise of Court's inherent power; and (3) sanctions under 11 U.S.C. § 105. (*Id.* at 22-28). Ultimately, the UST sought monetary and non-monetary sanctions and the imposition of a civil penalty under 11 U.S.C. 526(c)(5)(B) against Attorney Kakol. (*See id.* ¶¶ 69, 74, 88).

10

The debtors in the table below are derived from page six of the Complaint.  These debtors, excluding Leonard Henderson, Yung Lai, and Gunther Czarnecki,[8] are hereinafter jointly referred to as the "CMNC Debtor cases" or "CMNC Debtors."

**Table A**
**Debtors Listed on Page Six of Complaint**

| Debtor | Case Number | Date Case Filed | Date Rule 2016(b) Statement Filed |
|---|---|---|---|
| Richard Antrican | 22-40413 | 4/4/22 | 12/28/23 |
| Christy Fowler | 22-11088 | 9/30/22 | 12/28/23 |
| Amanda Gutierrez | 22-57866 | 10/3/22 | 12/28/23 |
| David Jennings | 22-57898 | 10/3/22 | 12/28/23 |

---

[8] Leonard Henderson is excluded from this defined group because CMNC did not pay Attorney Kakol's fees and costs for Leonard Henderson's bankruptcy case. Attorney Kakol did file statements, schedules, and a Rule 2016 fee disclosure statement in Leonard Henderson's case. The case was still ultimately dismissed.  Based on UST Exhibit 77 and a review of the case docket, it appears CMNC purchased Leonard Henderson's home while his bankruptcy case was pending without Court approval. Yung Lai and Gunther Czarnecki are excluded from this defined group because CMNC stated it had no involvement in the bankruptcy cases and did not pay Attorney Kakol's fees and costs for their bankruptcy cases even though it did purchase their homes.  Yung Lai's and Gunther Czarnecki's cases were dismissed for failing to cure filing deficiencies. CMNC purchased Yung Lai's and Gunther Czarnecki's homes after their bankruptcy cases were dismissed and resold them for a substantial profit.  Despite the fact that those cases may follow a slightly different path than the others, the Court has concerns about the way those cases were handled and requested production of documents for Yung Lai's case and Gunther Czarnecki's case shortly prior to trial because Attorney Kakol did not produce those case files to the UST. If the Court ordered a lesser sanction here, the Court would initiate a show cause proceeding with respect to Attorney Kakol's handling of those three cases to determine if additional sanctions are merited after obtaining additional evidence because the focus of the parties at trial in this proceeding was on the CMNC Debtor cases in which CMNC paid Attorney Kakol's attorney fees and the filing fee for the bankruptcy case.

| Jerome Davis | 22-58779 | 10/31/22 | 12/28/23 |
|---|---|---|---|
| Glynetta Anderson | 22-59814 | 12/3/22 | 12/28/23 |
| Shanterri Slaton | 22-59817 | 12/3/22 | 12/28/23 |
| Wade Butler[9] | 22-60648 | 12/30/22 | 12/29/23 |
| Teresa Blythe | 22-60652 | 12/30/22 | 12/29/23 |
| Tavius Maddox, Jr. | 22-60665 | 12/31/22 | 12/28/23 |
| Yung Lai | 23-50013 | 1/2/23 | Never filed |
| Lottie Harmon | 23-51143 | 2/5/23 | 12/29/23 |
| Sandra Byrd | 23-52093 | 3/3/23 | 12/15/23 |
| Gunther Czarnecki | 23-52149 | 3/6/23 | Never filed |
| Kareem Kenyada | 23-52198 | 3/6/23 | 12/15/23 |
| Callie Moore | 23-53145 | 4/3/23 | 12/28/23 |
| Leonard Henderson | 23-53168 | 4/3/23 | 4/3/23 |
| Demetrias Benton | 23-57235 | 7/30/23 | Orig. 8/7/23; Amend. 12/29/23 |
| Joshua Back | 23-57312 | 7/31/23 | Orig. 8/7/23; Amend. 12/29/23 |
| Johnny Hudson | 23-58584 | 9/4/23 | 12/29/23 |
| Roosevelt Williams | 23-59585 | 9/30/23 | Orig. 9/30/23; |

---

[9] Wade Butler's case is the sole Chapter 7 case at issue in this miscellaneous proceeding.

| | | | Amend. 12/29/23 |
|---|---|---|---|
| Gary Hartsell | 23-62018 | 12/4/23 | Orig. 12/6/23; Amend. 12/29/23 |

## C. The connection between CMNC and Attorney Kakol

### 1. CMNC, Attorney Kakol, and the Law Offices of Stanley J. Kakol, Jr., LLC

CMNC is a Georgia single member LLC with Burrow as the sole member and manager. The main individuals from CMNC who are relevant to this miscellaneous proceeding are Burrow and Edwards. CMNC is in the business of buying distressed homes, often in foreclosure, and reselling them for a profit. CMNC "rehabs" these homes before reselling them. This "rehabbing" ranges from merely removing trash and cleaning some homes to purportedly expending tens of thousands of dollars renovating the homes.

Attorney Kakol is the sole attorney at his law firm. Attorney Kakol started his firm in 2019 after not being employed as a lawyer since 2015 when he was terminated by C. Golden & Associates ("Golden").[10]  (*See*

---

[10] The Golden law firm was plagued by poor practice habits and closed its practice in early 2016. During its brief tenure, it was not uncommon for that law firm's fees to be reduced on account of its poor performance.

13

Attorney Kakol Dep. 17:15-20:19).  During those four years, he worked at Walmart or in the poultry farms in North Georgia.  (*See id.* 19:1-14). Prior to Attorney Kakol's time at the Golden law firm, he worked at Sandberg Law Firm LLC ("Sandberg") as an intake attorney.  As previously discussed, Attorney Kakol had his own firm before working for Sandberg, but Attorney Kakol was precluded by the State Bar of Georgia from continuing to manage his own law practice for a period of two years as part of a prior disciplinary proceeding.  *See In re Kakol*, 689 S.E.2d 308, 309-10 (Ga. 2010).

Eakin, a former employee of the now defunct law practices of Golden and Talitha Fleming & Associates, (Eakin Dep. 11:13-25), approached Attorney Kakol and helped him start his own firm with Eakin as its office manager.  (Attorney Kakol Dep. 22:15-23:17; Eakin Dep. 9:11-13).  Eakin and Attorney Kakol knew each other from their time at King and King.  (Eakin Dep. 12:22-25).

Attorney Kakol had various staff at his firm during the CMNC Debtor cases.  The main individuals at Attorney Kakol's law firm who are relevant to this miscellaneous proceeding are Jones, Hood, and Eakin. Jones, Hood, and Eakin are not attorneys.

### 2. CMNC discovers Attorney Kakol, and they reach an agreement regarding bankruptcy case filings.

Because CMNC is in the business of acquiring homes facing foreclosure, including homes of deceased people whose assets would also have to be probated, CMNC wanted to see if the bankruptcy of an heir could stop the foreclosure process. The bankruptcy stay of the foreclosure would give CMNC time to probate the property and close the sale, but there would be no intention of prosecuting the bankruptcy case and it would be quickly dismissed by the court. In Edwards' search for a bankruptcy attorney who would file such a case, he came across Attorney Kakol.

Edwards called Attorney Kakol to discuss stopping foreclosures by filing bankruptcy to allow CMNC time to purchase homes, including when the borrower was deceased, with CMNC agreeing to pay the attorney fees and costs for the bankruptcy case. Burrow participated in this phone call. Burrow testified regarding this call:

> [W]hen we reached out and talked to Stan, we - - we asked questions and asked is this possible . . . .
>
> And I remember asking the question is there any conflict of interest if we pay for this. And his response was absolutely no as long as things are

15

> done properly by me, meaning Stan, and disclosed.
> . . .
>
> But we absolutely relied on his expertise and, I guess, license to direct us to what's appropriate or what's not.

(Burrow Dep. 78:20-79:13).

Attorney Kakol ultimately reached an agreement with CMNC pursuant to which Attorney Kakol would file bankruptcy cases for individuals referred to him by CMNC to stop pending foreclosures on homes CMNC had contracted to buy in order for CMNC to have time to purchase the homes.  CMNC would directly pay Attorney Kakol's law firm $1,000 for each CMNC Debtor bankruptcy case,[11] and CMNC would pay the filing fee of $313 for each bankruptcy case.[12]  Attorney Kakol testified that he negotiated the $1,000 price per CMNC Debtor bankruptcy case with Edwards. (Attorney Kakol Dep. 86:14-19).[13] Attorney Kakol further testified that this is the going rate for a "front-

---

[11] Attorney Kakol would be paid an additional $1,000 by CMNC if the bankruptcy case had to be refiled to provide CMNC more time to close the sale of the home.  CMNC would also pay the filing fee for the refiled bankruptcy case.

[12] The Court's calculation is that Attorney Kakol was paid attorney fees of $22,000 for the CMNC Debtor cases, not including the two cases he filed for James Day.  This is based upon Attorney Kakol filing bankruptcy twice for three CMNC Debtors and filing bankruptcy once for the remaining sixteen CMNC Debtors.

[13] There is no evidence that Attorney Kakol received anything from CMNC other than the $1,000 fee and the payment of the $313 filing fee for each CMNC Debtor case Attorney Kakol filed.

page-only" filing[14] and that other firms charge the same amount for front-page-only filings.  (Attorney Kakol Dep. 76:14-21).

### D. Process utilized by CMNC and Attorney Kakol for the CMNC Debtors

#### 1. CMNC finds the CMNC Debtors and CMNC's real estate purchase contracts with them

CMNC's employees would check upcoming foreclosure sales and would go to the home being foreclosed and attempt to speak to the inhabitants.  If no one was home, a CMNC employee, such as Edwards, would leave a flyer stating the home was being foreclosed and CMNC wanted to purchase it.  If inhabitants of the home were present, Edwards or another CMNC employee would generally go into the home being foreclosed and do a visual inspection of the home.  If a purchase price was agreed upon the seller, here the CMNC Debtors, would sign a real estate purchase contract with CMNC.[15]

---

[14] A front-page-only filing is the filing of a bankruptcy petition with no intention to file anything further or to otherwise prosecute the bankruptcy case so that the case will be dismissed automatically by the Court within thirty days or so after the filing of the case for failure to file other required information within the time set forth in an order entered by the Court.

[15] Under Georgia law, non-judicial foreclosures can be accomplished in as little as four weeks from the day the first foreclosure advertisement appears.  The contracts with the CMNC Debtors were generally signed in the middle of a month, which would be about two weeks before foreclosure day (the first Tuesday of the month).  *See* GA. CODE ANN. § 9-13-161(a); GA. CODE ANN. § 44-14-162(a).  A property put under contract this quickly while a foreclosure is pending would typically not be considered a fair market value sale because the marketing period is too short and the seller is distressed.

17

The majority of the real estate purchase contracts in the CMNC Debtor cases contained provisions that required the CMNC Debtors to file probate as an heir of the homeowner and to also individually file bankruptcy and use Attorney Kakol's law firm for the bankruptcy case. This probate aspect is important because many of the CMNC Debtors were not legally responsible for the mortgage.[16]  There is no evidence the CMNC Debtors consulted with either a probate attorney or bankruptcy attorney before signing these real estate purchase contracts.[17]

### 2. Three-way phone calls between Edwards, Attorney Kakol, and CMNC Debtors

After entering into a real estate purchase contract with CMNC, each CMNC Debtor would have a three-way phone consultation with Attorney Kakol and Edwards about filing bankruptcy.  Edwards testified

---

[16] Attorney Kakol testified that during a phone call with Edwards he advised CMNC that the CMNC Debtors, as an heir of the decedent homeowner, held an equitable title in the real property CMNC had contracted to purchase, which interest could be protected by the filing of a bankruptcy.  *See* (Attorney Kakol Dep. 83:12-84:1).  The Court does not recall any testimony that Attorney Kakol provided the advice of equitable title to any of the CMNC Debtors.

[17] Although Yung Lai is not defined as a CMNC Debtor, Attorney Kakol filed bankruptcy on her behalf and then referred her to CMNC.  Burrow testified that Attorney Kakol's law firm reached out to Edwards to let him know that "this individual [Yung Lai] wants to sell the property and is up against foreclosure.  Give them a call.  See what you can do." (Burrow Dep. 117:22-118:3).  CMNC purchased her home and subsequently sold it for a $111k profit.  Attorney Kakol could not specifically recall this case at trial but did testify that under a hypothetical fact situation similar to what the Court described above, the case probably should have been converted to Chapter 7 or refiled as a Chapter 13.  *See* Apr. 1, 2026, Hearing at 2:41-2:42 PM, 2:50-2:52 PM, *In re Kakol*, Miscellaneous Proc. No. 24-00502 (Bankr. N.D. Ga.).  The Court is not considering her bankruptcy case in determining the sanction on Attorney Kakol because the parties focused on the CMNC Debtor cases in which CMNC paid his fee.

that each call lasted around five minutes, but some could last longer if the CMNC Debtor had questions for Attorney Kakol. (Edwards Dep. 42:3-8; 73:1-16). Although Attorney Kakol knew the CMNC Debtors had signed a real estate purchase contract with CMNC to purchase their homes, he did not receive copies of the real estate purchase contracts, did not know the specific terms of the real estate purchase contracts, nor did he ask the CMNC Debtors about the real estate purchase contracts they entered into with CMNC. (*See* Attorney Kakol Dep. 110:2-17).

Attorney Kakol also did not obtain from the CMNC Debtors other fundamental and customary information a bankruptcy attorney would obtain to provide the required advice and consultation about the debtor's financial affairs, the advisability of bankruptcy and, if advisable, the appropriate Chapter (7 or 13) under which they should seek relief. This information at a minimum would include matters such as the amount of the mortgage, the arrearage or cause of default, the value of the property, the amount the debtor would get from the sale, the debtor's income and expenses, and other assets and liabilities.

Attorney Kakol even testified at his deposition that he would not have taken the CMNC Debtor cases if the CMNC Debtors had asked him

19

to look at their real estate purchase contracts with CMNC. (*See* Attorney Kakol Dep. 129:25-130:7). Attorney Kakol's deposition testimony is similar to his testimony in the *Day* trial where he testified about not advising Mr. Day whether he should sell his home to CMNC:

> I'm certainly not going to take Kyle Edwards' money to get involved in—if he would've said—I would've stopped the train and said wait a second, we have a conflict of interest here. If you don't want to go through with this thing, you need to tell me. So, I would have stopped it right there.

*See* Jan. 11, 2024, Hearing at 12:04 PM, *In re James Day (II)*, Ch. 13 Case No. 23-52197 (Bankr. N.D. Ga.).

According to Attorney Kakol, a real estate purchase contract had already been signed to sell the property to CMNC, and the scope of his representation, he says, was limited to merely stopping a foreclosure to allow that contract to close. Attorney Kakol maintained that he did not have to provide the CMNC Debtors with any analysis of their financial condition and options or alternatives, even though the CMNC Debtors would have gained the benefit of and breathing spell from the automatic stay of bankruptcy instead of selling a property under the threat of an imminent foreclosure.

20

### 3. Bankruptcy petitions filed by Attorney Kakol in the CMNC Debtor cases

After the initial phone call, Attorney Kakol's staff would sometimes pull a credit report for the CMNC Debtor.  Some credit reports pulled for CMNC Debtors showed no creditors, such as David Jennings[18] and Demetrias Benton, but bankruptcy cases were filed for them anyway.  In other CMNC Debtor cases, Attorney Kakol's staff pulled credit reports that showed creditors that were not listed in the bankruptcy petition filed, such as Christy Fowler and Amanda Gutierrez.  For the CMNC Debtor cases where a credit report was pulled, it is clear that Attorney Kakol did not review or seriously consider the credit reports. Other bankruptcy cases were filed for CMNC Debtors for whom no credit report was pulled and who may not have had any creditors.

Additionally, after the initial phone call, Attorney Kakol's staff would sometimes pull online value estimates for the real property at issue—normally from Zillow.com or Realtor.com.  The real estate value estimates Attorney Kakol's staff pulled were higher than the purchase price paid by CMNC to the CMNC Debtors.  But Attorney Kakol did not

---

[18] Attorney Kakol did not list any creditors in the bankruptcy petition for David Jennings.

21

know what the CMNC Debtors were being paid, nor does it appear that Attorney Kakol looked at the real estate value estimates, which were important information.

Ultimately, Attorney Kakol would have his staff obtain the CMNC Debtor's electronic signature on a bankruptcy petition and file the bankruptcy petition.  Because these were what Attorney Kakol referred to as front-page-only filings, the bankruptcy petitions generally only listed the mortgage lender or servicer as a creditor, but did not include statements of financial affairs, schedules of assets and liabilities, or the disclosure of the attorney fee agreement and payment as required by Rule 2016.  But Attorney Kakol's staff did have the CMNC Debtors take a credit counseling course, and then Attorney Kakol's staff filed the statutorily required credit counseling certificates.[19]

The CMNC Debtor cases would subsequently be dismissed in about thirty days by the Court for failing to cure filing deficiencies such as

---

[19] It would have looked very unusual for an attorney to file a consumer bankruptcy case without contemporaneously filing the certificate of completion of an approved credit counseling course. Attorney Kakol testified that his law firm had the CMNC Debtors take the credit counseling class because they thought they could not electronically file a consumer bankruptcy case without doing so, but that is simply not true.  If the credit counseling certificate is not filed with the petition, it merely causes the Clerk's Office to generate a deficiency notice that the case may be dismissed if it is not filed within fourteen days, just like if the required statements, schedules and Form 2030 required by Rule 2016 statement were not filed with the petition.

failing to file the statement of financial affairs, schedules of assets and liabilities and other schedules, and the Rule 2016 fee disclosure statement.[20]  Sometimes, CMNC would pay Attorney Kakol to refile the dismissed bankruptcy cases on behalf of the CMNC Debtors to give CMNC even more time to purchase the homes.[21]

### 4. CMNC's purchase of CMNC Debtors' homes and CMMC's profit

In most cases, CMNC would eventually purchase the home in which the CMNC Debtors had an interest, either directly as owner or as an heir, and subsequently sell them at a profit, sometimes substantial.  Edwards testified regarding the necessity of CMNC Debtors' bankruptcy cases being dismissed before CMNC purchased the homes as follows:

> Q.  If the court needed - - if the Bankruptcy Court needed to become involved in approving the sale, do you believe that would complicate and delay things regarding CMNC's ability to acquire ownership of the property?
>
> . . . .
>
> A.  Yes, if we had to get bankruptcy approval, then it would delay the closing.

---

[20] Counsel in this miscellaneous proceeding stipulated that for the CMNC Debtor cases, after the bankruptcy petitions were filed, Attorney Kakol never intended to file anything else or expend any effort to get the information to complete these documents.  *See* (Jones Dep. 72:7-18).

[21] Examples of this include Callie Moore (case nos. 22-59917 and 23-53145), Roosevelt Williams (case nos. 23-56326 and 23-59585), and Lottie Harmon (case nos. 22-58666 and 23-51143).

Q. And so optimally, the cases needed to be filed and dismissed relatively quickly to stop the foreclosure, but also to allow CMNC to acquire the properties without court intervention?

. . . .

A. The bankruptcy - - the foreclosure needed to be - - the bankruptcy needed to stop the foreclosure long enough for the probate to complete, but, yes, we would - - it would need to end before we could purchase.

Q. Correct. And so the way Mr. Kakol handled these cases by filing a petition, but by there being no further activity in the case facilitated the needs not just of CMNC, but also the sellers to sell these properties to CMNC without court oversight and approval?

. . . .

A. Yes, I would assume so.

(Edwards Dep. 176:11-177:16).[22]

---

[22] Attorney Kakol's counsel objected to each question asked in the block quote, but the objection to each question was merely "Object as to form." This objection is not sufficient because it does not identify the specific basis for the objection (*e.g.*, leading, compound, calls for a legal conclusion, etc.). Therefore, Attorney Kakol has waived these objections, and the Court overrules these objections. *See Henderson v. B & B Precast & Pipe, LLC*, Case No. 4:13-CV-528, 2014 U.S. Dist. LEXIS 112441, 2014 WL 4063673, at *1-2 (M.D. Ga. Aug. 14, 2014) (overruling a party's "object to form" objections in a deposition and noting that "if a question is propounded in an improper form, the objection should be stated concisely on the record during the deposition in a manner that provides the questioner with a reasonable opportunity to correct the form of the question. Failure to do so waives the objection."); *J.S.X. v. Foxhoven*, Case No. 4:17-cv-00417, 2019 U.S. Dist. LEXIS 242440, 2019 WL 13167146, at *8 (S.D. Iowa May 23, 2019) (noting that the court joined "other federal district courts that have found that merely objecting to a question's 'form' is insufficient to preserve the objection under FRCP 32(d)." (citations omitted)); FED. R. BANKR. P. 30 (providing that Federal Rule of Civil Procedure 30 is applicable to bankruptcy proceedings); FED. R. BANKR. P. 32 (providing that Federal Rule of Civil Procedure 32 is applicable to bankruptcy proceedings).

The following is a chart illustrating CMNC's net profit on the CMNC Debtors'[23] homes:

**Table B**
**Amount CMNC Paid to CMNC Debtors and CMNC Profit**

| Debtor (D.) | CMNC Buy | CMNC Costs[24] | CMNC Sale Price | CMNC Net Profit | CMNC Return | How Much D. Received |
|---|---|---|---|---|---|---|
| Back | $146,915 | $71,595 | $499,370 | $280,858 | 129% | $15,000 |
| Davis | $86,048 | $4,410 | $161,994 | $71,535 | 79% | $10,000 |
| Antrican | $98,400 | $53,481 | $258,210 | $106,328 | 70% | $6,000 |
| Jennings | $78,146 | $66,326 | $213,496 | $69,022 | 48% | $5,000 |
| Harmon | $146,472 | $81,999 | $336,275 | $107,802 | 47% | $2,500 |
| Slaton | $130,692 | $83,809 | $298,686 | $84,185 | 39% | $15,000 |
| Gutierrez | $109,039 | $15,710 | $170,028 | $45,278 | 36% | $97,000 |
| Fowler | $123,436 | $6,111 | $170,568 | $41,020 | 32% | $5,000 |
| Blythe | $210,782 | $74,290 | $362,468 | $77,395 | 27% | $50,000 |
| Anderson | $144,000 | $3,517 | $165,084 | $17,566 | 12% | $10,000 |
| Kenyada | $235,786 | $3,174 | $262,000 | $23,038 | 10% | $2,000 |

Edwards testified that the reason CMNC stopped referring bankruptcy cases to Attorney Kakol after the last of the CMNC Debtor cases was filed was because Edwards became aware that there were

---

[23] Wade Butler, Tavius Maddox, Jr., Sandra Byrd, Demetrias Benton, and Roosevelt Williams are not listed in Table B because CMNC did not purchase their property. Johnny Hudson is not listed in Table B because although CMNC purchased his home, CMNC's ultimate sale price was not clear. Callie Moore is not listed in Table B because although CMNC purchased the home, CMNC has not yet sold the home so no profit can be determined. Gary Hartsell is not listed in Table B because there is no evidence of what the rehab costs were on the property. Yung Lai and Gunter Czarnecki are not listed in Table B because they do not fit the definition of a CMNC Debtor nor is there any evidence of rehab costs. Leonard Henderson is not listed in Table B because he does not fit the definition of a CMNC Debtor. Additionally, although CMNC purchased Leonard Henderson's home, it was not clear what he was paid by CMNC after the mortgage was paid off.

[24] CMNC's costs include fees and costs paid for bankruptcy and probate cases.

issues raised with Attorney Kakol's handling of the cases that CMNC was referring to him.  *See* (Edwards Dep. 136:23-137:5).

### E. Attorney Kakol's case files for the CMNC Debtors

Attorney Kakol ultimately produced nineteen case files for the twenty-two cases listed in this miscellaneous proceeding.[25]  These case files varied in length and as to what they contained. For example, only two case files had the Rights and Responsibilities Statement required under General Order 42-2020, which will be explained in detail later in this Order.[26]  Also, as noted above, some of the case files had a credit report for the CMNC Debtor and real estate value estimates from a website such as Zillow.com for the home CMNC was purchasing, but others did not.  Other important contents are discussed below.

### 1. Attorney Kakol's inter-office notes and his staffs' checklists

Attorney Kakol would take notes on a yellow legal pad concerning the CMNC Debtors.  Many of Attorney Kakol's notes state that the case is an Edwards' referral, that there is a foreclosure, and that it is a FPO

---

[25] Attorney Kakol did not produce case files for Wade Butler's case, Leonard Henderson's case, and Joshua Back's case.  It is obviously troubling that Attorney Kakol could not produce case files for these recently filed cases.

[26] These two case files were Yung Lai and Demetrias Benton.  The Rights and Responsibilities statement was filed with the bankruptcy petition in Leonard Henderson's case.

26

case, which means front-page-only. Attorney Kakol's notes do not have any analysis of the CMNC Debtors' financial situation.

Additionally, Attorney Kakol's staff had checklists they would write notes on. Many of these checklists would note that the case was from Edwards and that the case was FPO.

### 2. Attorney Kakol's attorney-client fee agreements with CMNC Debtors

Of the seventeen case files produced for CMNC Debtors, only four of them did not have attorney-client agreements.[27] Some of these attorney-client agreements listed an erroneous amount for the cost of the representation. For example, the attorney-client agreement in Demetrias Benton's case file lists the attorney fee amount as $5,653 when in reality it was only $1,000. (UST Ex. 88, 4).

Even though Attorney Kakol has taken the position that his representation of the CMNC Debtors was limited to just filing a bankruptcy petition and not prosecuting their cases, Attorney Kakol's attorney-client agreements with the CMNC Debtors contain no such limitation.

---

[27] The four case files which did not have attorney-client agreements were Christy Fowler, David Jennings, Teresa Blythe, and Tavius Maddox, Jr.

The attorney-client agreements Attorney Kakol had with CMNC Debtors were largely the same for each CMNC Debtor. The description of "Base Fee Services" was the same in each attorney-client agreement and included the following:

> In return for the above-described Base Fee, attorney agrees to render legal services for the bankruptcy case, including analysis of the client's financial situation, and rendering advice to the client in determining whether to file a petition in bankruptcy; preparation and filing of any petition, schedules, statements of affairs, and plan which may be required; representation of the client at the meeting of creditors and confirmation hearing, and any adjourned hearings thereof; stopping creditor actions against client pre confirmation; preparation of any pre-confirmation Motion to Extend or Impose Stay; preparation of any response to a pre-confirmation Motion for relief from Stay; preparation of the employer deduction order; preparation of any lien avoidances necessary to confirm the plan; preparation of any Motion to strip any second mortgage, if applicable; preparation of any amendments necessary to confirm plan; preparation of any objections to claims necessary to confirm plan; preparation of objections to any late filed claim; bar date reviews of claims, filing certification and resulting pleadings; preparation of any change of address forms; helping client obtain pre-filing credit counseling; helping client obtain tax transcripts, initial intake; pre-confirmation turn-over proceedings; helping client obtain pre-discharge financial counseling certificates; and preparation of post-confirmation amendments to add creditors.

These attorney-client agreements were typically signed by both Attorney Kakol and the CMNC Debtor.

### 3. Attorney Kakol's staffs' Best Case notes regarding the CMNC Debtor cases

Attorney Kakol's staff would input notes in their Best Case software concerning the CMNC Debtor cases.[28]  Many of these entries noted that the case was from Edwards, that the case was FPO, that no schedules were needed because it was a "Kyle Edwards case," (UST Ex. 59, 44), and that the case was supposed to dismiss since it was an "Edwards FPO," (UST Ex. 65, 24).  There were also some entries that evidenced some of the CMNC Debtors did not understand what was occurring.  There was even one entry where Attorney Kakol's staff noted that the staff member called Edwards—not the CMNC Debtor—to see if Edwards wanted them to refile the bankruptcy for the CMNC Debtor.

Examples of Best Case entries by Attorney Kakol's staff showing that the CMNC Debtor cases were FPO Edwards' cases that did not need things such as schedules or were an Edwards' case that was supposed to dismiss are Lottie Harmon, Roosevelt Williams, and Sandra Byrd. In

---

[28] Best Case is a software program used by many consumer bankruptcy attorneys.

29

Lottie Harmon's case, a member of Attorney Kakol's staff entered a note on February 5, 2023, that was titled "FPO (KE)," and the body of the note stated "No schedules completion needed.  Kyle Edwards case."  (UST Ex. 59, 44).  In Roosevelt Williams' case, a member of Attorney Kakol's staff entered a note on September 30, 2023, that was titled "KE Case," and the body of the note stated "No schedules completion or MTE[29] needed." (UST Ex. 103, 49).  In Sandra Byrd's case, a member of Attorney Kakol's staff entered a note on April 4, 2023, that stated "This was a Kyle Edwards FPO, it was supposed to dismiss."  (UST Ex. 65, 24).

Entries made by Attorney Kakol's staff in Best Case regarding Richard Antrican's case and Sandra Byrd's case evidence these debtors did not understand what was occurring in their bankruptcy cases.  In Richard Antrican's case, a member of Attorney Kakol's staff entered a note on June 8, 2022, that stated in part the staff member spoke with Richard Antrican on that day and the day before and let him know that his bankruptcy case was dismissed on May 3, 2022.  (UST Ex. 5, 39).  This note also stated "Client does not appear to know or understand what is happening."  (*Id*.).  In Sanda Byrd's case, a member of Attorney Kakol's

---

[29] The Court believes MTE would mean a Motion to Extend the time to file such papers.

staff entered a note on April 12, 2023, that stated in part "Client called crying and upset because she is confused."  (UST Ex. 65, 24). Sandra Byrd's bankruptcy case was previously dismissed.  (*Id.*).

Entries made by Attorney Kakol's staff in Lottie Harmon's case and Sandra Byrd's case also indicate that Edwards was directing the representation.  In Lottie Harmon's case, a member of Attorney Kakol's staff entered a note on October 24, 2022, that was titled "Foreclosure Case-Kyle Edwards wants filed by Oct 24th or 25th."  (UST Ex. 59, 44). In Sandra Byrd's case, a member of Attorney Kakol's staff entered a note on April 12, 2023, that was titled "Called Kyle to inquire as to whether he wants us to refile this client."  (UST Ex. 65, 24).

### F. Communications between Edwards and CMNC Debtors

CMNC produced to the UST text messages between Edwards and some of the CMNC Debtors which show how involved CMNC was with the CMNC Debtor cases.  These text messages show Edwards advising some CMNC Debtors on whether they needed to refile bankruptcy, advising some CMNC Debtors that it was okay to fill out bankruptcy documents and that they would call Attorney Kakol together.  This shows Edwards was serving as the intermediary between Attorney Kakol and

31

some CMNC Debtors.  There were also text messages showing Edwards

threatening legal action against one of the CMNC Debtors—while the

bankruptcy was pending—if she did not sell her home to CMNC.

The following are examples of text messages between Edwards and

some CMNC Debtors[30]:

- **Teresa Blythe** (Bankruptcy filed December 30, 2022; dismissed January 24, 2023)[31]
  - January 17, 2023: Edwards texts Teresa Blythe that he recorded a legal document against her property and threatened her with litigation while she is in bankruptcy if she does not sell the house to CMNC.
  - January 18, 2023: Teresa Blythe texts Edwards that she wants to keep her house instead of selling it because she has no place to go and the purchase price will not last long.
- **Callie Moore** (Bankruptcy filed April 3, 2023; dismissed April 28, 2023)[32]
  - March 28, 2023: Edwards texts Callie Moore to call him today as "we need to get the bankruptcy refiled."
  - March 29, 2023: Edwards texts Callie Moore that he has been trying to reach her as her bankruptcy needs to be refiled to stop the foreclosure.
  - March 30, 2023: Edwards texts Callie Moore that he will call her with the attorney.
  - March 31, 2023: Edwards texts Callie Moore that "if we don't get this bankruptcy refiled, your house will

---

[30] In each of these cases, the CMNC Debtor had already spoken to Attorney Kakol (or his staff), Attorney Kakol had already filed bankruptcy for them, or Attorney Kakol's staff was attempting to contact the CMNC Debtor for information to file the bankruptcy.  For Callie Moore, Attorney Kakol filed bankruptcy twice for her as requested by CMNC.  The first bankruptcy was filed on December 5, 2022 (case no. 22-59917).  The second bankruptcy was filed on April 3, 2023 (case no. 23-53145).  CMNC paid for both bankruptcies, and both were dismissed.

[31] These text messages are from UST exhibit 41 and Edwards deposition exhibit D-005, page 13.

[32] These text messages are from UST exhibit 81.

foreclosure [sic] on Tuesday.  Call me back so we can get this done!"

- o March 31, 2023: Callie Moore texts Edwards "Why didn't you tell me I could have gotten a lot more for this house then what you offered I trusted you you knew what I was going through and how hard this was for me and you took advantage of that I was told I didn't have a choice and I didn't know what to do so I trusted you now I don't have a choice but I don't know if I can sign anything else . . . ."
- o April 3, 2023: Edwards texts Callie Moore that the bankruptcy attorney [Attorney Kakol] sent her an email with documents to sign, to do this as soon as possible, and let him know if she needed any help.  Callie Moore asks Edwards for more money.
- o April 12, 2023: Callie Moore asks Edwards about a bankruptcy solicitation she received, and Edwards tells her it is spam.

- **Kareem Kenyada** (Bankruptcy filed March 6, 2023; dismissed March 31, 2023)[33]
  - o March 3, 2023: Kareem Kenyada texts Edwards that "**an attorney text said they worked for you** and wanted sensitive information, thought I'd tell you before I start sending people stuff." (emphasis added). Edwards asked him who the attorney is, and Kareem Kenyada says "Kakols."  Edwards responds "**that is the bankruptcy attorney[;] [y]es you can give them info.**" (emphasis added).

- **Amanda Gutierrez** (Bankruptcy filed October 3, 2022; dismissed November 1, 2022)[34]
  - o October 3, 2022: Edwards provides an update to Amanda Gutierrez that Attorney Kakol let him know the bankruptcy petition stopped the foreclosure.
  - o October 8, 2022: Amanda Gutierrez texts Edwards about bankruptcy documents she received, and

---

[33] These text messages are from UST exhibit 73.
[34] These text messages are from UST exhibit 15.

Edwards lets her know that they can call Attorney Kakol "together" to discuss the documents.

- o November 6, 2022: Amanda Gutierrez texts Edwards about other bankruptcy documents she received, and **Edwards lets her know that he will "take a look and ask the bankruptcy attorney [Attorney Kakol] about them**." (emphasis added).

- **Glynetta Anderson** (Bankruptcy filed December 3, 2022; dismissed December 28, 2022)[35]
  - o December 1, 2022: Glynetta Anderson texts Edwards that she had not received an email from Attorney Kakol's law firm, and Edwards responds that he will follow up with Attorney Kakol's law firm about the email.

- **Joshua Back** (Bankruptcy filed July 31, 2023; dismissed August 25, 2023)[36]
  - o No date: Joshua Back texts Edwards whether he "**can ask whoever you need to if I need to refile bankruptcy?**" (emphasis added). Edwards responds: "**[Y]ou should not have to file bankruptcy.**" (emphasis added).

- **Tavius Maddox** (Bankruptcy filed December 31, 2022; dismissed January 24, 2023)[37]
  - o January 4, 2023: Tavius Maddox asks Edwards, not Attorney Kakol, if the bankruptcy went "through," and Edwards responds it did.

## G. Communications between (1) Edwards and Attorney Kakol and (2) Edwards and Eakin regarding CMNC Debtor cases

CMNC produced to the UST text messages that were between (1)

Attorney Kakol and Edwards and (2) Eakin and Edwards. These text

---

[35] These text messages from UST exhibit 30.

[36] These text messages from UST exhibit 93.

[37] These text messages are from UST exhibit 50.

34

messages show how diligent Attorney Kakol and Eakin were with informing Edwards of the status of CMNC Debtor cases.

Text messages between Attorney Kakol and Edwards were limited, but they show Edwards asking Attorney Kakol about starting bankruptcy cases and checking on foreclosures.   The following are examples of these text messages:

- December 30, 2022: Edwards texts Attorney Kakol in pertinent part "I need to get 1 more bankruptcy started today." (Edwards Dep., Ex. 27, 1).
- January 3, 2023: Edwards texts Attorney Kakol "I just called Albertelli Law about 287 Banberry[38] and they are still showing it's going to be auctioned." Attorney Kakol responds "I will call them now." Edwards then asks Attorney Kakol to keep him updated on the status of the auction and Attorney Kakol says he will. (Edwards Dep., Ex. 27, 1).

Text messages between Edwards and Eakin show Edwards and Eakin sharing information about the CMNC Debtor cases. The following are examples of these text messages:

- October 3, 2022: Edwards texts Eakin "just checking on the 3 bankruptcies." Eakin responds "Hi Kyle, all 3 are filed . . . . We are verifying the sale has been stopped now." (Edwards Dep., Ex. 28, 1).
- October 19, 2022: Eakin informs Edwards that Attorney Kakol's law firm's goal is to file Lottie Harmon's bankruptcy "on the 24th or 25th." (Edwards Dep., Ex. 28, 2-3).

---

[38] This home is the property CMNC was attempting to purchase in Tavius Maddox, Jr.'s case.

- December 30, 2022: Edwards texts Eakin in pertinent part "[D]o we have confirmations that the foreclosures are stopped for Tavius Mattox [sic] and Teresa Blythe"? Eakin responds in pertinent part "I think we're good. Ms. Blythe is on the phone with one of the paralegals now completing the interview portion, and Mr. Mattox [sic] is doing his credit counseling. We anticipate having both filed today and all notifications done today. I'll send you an update before leaving work." (Edwards Dep., Ex. 28, 5).
- December 30, 2022: Edwards also texts Eakin in pertinent part "[D]o I need to reach out to mattox [sic] for that signature"? Eakin responds in pertinent part "Janice is on the phone walking Mattox [sic] through the signatures now and the credit counseling done. So we have him ready." (Edwards Dep., Ex. 28, 6).
- February 3, 2023: Eakin texts Edwards in pertinent part **"[W]e are waiting on Ms. Harmon to sign. Maybe you can give her a push.** Thanks." (Edwards Dep., Ex. 28, 8) (emphasis added).

CMNC also produced to the UST emails between Edwards and Attorney Kakol's office. In an email dated September 1, 2023, Eakin copied Edwards on an email sent to the mortgage lender's law firm about stopping the foreclosure in Callie Moore's bankruptcy cases. (Edwards Dep., Ex. 29, 13). Callie Moore was not copied on the email. (*Id.*).

### H. Rule 2016(b) statements Attorney Kakol filed in the CMNC Debtor cases

In the majority of the CMNC Debtor cases, Attorney Kakol did not file a Rule 2016(b) statement until after the cases were dismissed and the UST filed the Day Sanctions Motion. In some of the CMNC Debtor cases,

36

Attorney Kakol did not file a Rule 2016(b) statement until more than a year after he originally filed the case.[39]  But being filed late was not the only problem with the Rule 2016(b) statements Attorney Kakol filed in the CMNC Debtor cases.

First, every Rule 2016(b) statement filed in the nineteen CMNC Debtor cases were materially false because they listed services that Attorney Kakol never performed and knew that he never was going to perform.  In the Rule 2016(b) statements Attorney Kakol filed in the eighteen CMNC Debtor Chapter 13 cases, section 6 of each Rule 2016(b) statement stated in pertinent part:

> 6. In return for the above-disclosed fee, **I have agreed to render legal service for all aspects of the bankruptcy case**, including:
>     a. Analysis of the debtor's financial situation, and rendering advice to the debtor in determining whether to file a petition in bankruptcy;
>     b. Preparation and filing of any petition, schedules, statement of affairs and plan which may be required;
>     c. Representation of the debtor at the meeting of creditors and confirmation hearing, and any adjourned hearings thereof;
>     d. Representation of the debtor in adversary proceedings and other contested bankruptcy matters;

---

[39] Although not CMNC Debtor cases, Attorney Kakol never filed a Rule 2016(b) statement in Yung Lai's case or in Gunther Czarnecki's case.

37

    e. [Other provisions as needed]

      Base/flat fee services:

      Assisting client obtain prefiling credit counseling

      Assisting client obtain pay advices

      Assisting client obtain tax transcripts, returns, and other relative documentation

      Assisting in the preparation and completion of client's bankruptcy petition

      Preparing and filing changes of address

      Pre-confirmation turnover proceedings

      Stop creditor actions against client

      Motion to Extend Stay or to Impose Stay

      Motion for Finding of Exigent Circumstances

      Obtaining Employment Deduction Order and serving employer

      Order to Vacate Employer Deduction Order

      Attending and representing client at the 341 Hearing and any reset hearings

      Attending and representing client at the Confirmation Hearing and any reset hearings

      Preparing and filing Modifications necessary to confirm client's plan

      Preparing and filing lien avoidances necessary to confirm client's plan

      Objections to claims necessary to confirm plan

      Objections to late filed claims

      Bar date review (and all resulting/related pleadings)

      Provide information in obtaining pre-discharge financial counseling certificate

      Post-Confirmation amendment to add creditors

      Resolving Trustee or creditor motions to modify the plan.

(emphasis added).

In the sole CMNC Debtor Chapter 7 case (Wade Butler) at issue in this miscellaneous proceeding, Attorney Kakol falsely stated in the Rule 2016(b) statement the services he was to provide the debtor:

> 5. In return for the above-disclosed fee, **I have agreed to render legal service for all aspects of the bankruptcy case**, including:
>
>> a. Analysis of the debtor's financial situation, and rendering advice to the debtor in determining whether to file a petition in bankruptcy;
>> b. Preparation and filing of any petition, schedules, statement of affairs and plan which may be required;
>> c. Representation of the debtor at the meeting of creditors and confirmation hearing, and any adjourned hearings thereof;
>> d. [Other provisions as needed]
>> Negotiations with secured creditors to reduce market value; exemption planning; preparation and filing of reaffirmation agreements and applications as needed; preparation and filing of motions pursuant to 11 USC 522(f)(2)(A) for avoidance of liens on household goods.

(emphasis added).

The Rule 2016(b) statement Attorney Kakol filed in Wade Butler's case also contained a certification which stated: "I certify that the foregoing is a complete statement of any agreement or arrangement for

payment to me for representation of the debtor(s) in this bankruptcy proceeding." Attorney Kakol signed this Rule 2016(b) statement.

Second, in addition to the Rule 2016(b) statements Attorney Kakol filed listing services he never intended to perform, Attorney Kakol also falsely certified in the Rule 2016(b) statements he filed in seventeen of the CMNC Debtor Chapter 13 cases that he provided the debtor with "a copy of the 'Rights and Responsibilities Statement Between Chapter 13 Debtors and Their Attorneys.'"[40]  This false certification stated as follows:

> I certify that the foregoing is a complete statement of any agreement or arrangement for payment to me for representation of the debtor(s) in this bankruptcy proceeding. Pursuant to General Order No. 9, I certify that I provided to the debtor(s) a copy of the "Rights and Responsibilities Statement Between Chapter 13 Debtors and Their Attorneys."

Attorney Kakol signed each Rule 2016(b) statement.[41]

Lastly, some of the Rule 2016(b) statements incorrectly listed the amount of compensation Attorney Kakol was to be paid.  In Richard Antrican's case, the Rule 2016(b) statement Attorney Kakol filed stated

---

[40] Demetrias Benton is the only CMNC Debtor whose case file contained a Rights and Responsibilities Statement.  (UST Ex. 88, 15-17).

[41] Attorney Kakol's testified at trial that the Rights and Responsibilities Statement is typically overlooked in front-page-only filings. Apr. 1, 2026, Hearing at 12:14-12:15 PM, *In re Kakol*, Miscellaneous Proc. No. 24-00502 (Bankr. N.D. Ga.).

40

that Attorney Kakol had agreed to accept $2,000 for his legal services. Attorney Kakol testified that this amount was incorrect. *See* Apr. 1, 2026, Hearing at 12:19 PM, *In re Kakol*, Miscellaneous Proc. No. 24-00502 (Bankr. N.D. Ga.). In Wade Butler's case, the Rule 2016(b) statement Attorney Kakol filed stated that he agreed to accept $975 for his legal services. Edwards testified that he did not remember paying less than $1,000 for any of the CMNC Debtors' cases. (Edwards Dep. 101:2-4).

The Rule 2016(b) statements Attorney Kakol filed in the cases for Demetrias Benton and Joshua Back incorrectly listed the amount of compensation and the source of compensation to Attorney Kakol. In these two cases, the original Rule 2016(b) statements Attorney Kakol filed falsely listed the source of compensation as the Debtor—not CMNC—and that $1,000 had been paid prior to filing with $4,030 due. Both of these Rule 2016(b) statements were filed after the UST had put Attorney Kakol on written notice that it was inquiring into his conduct in the *Day* case, including the source of his fee. In both of these cases, Attorney Kakol finally filed amended Rule 2016(b) statements in December of 2023—well after the Day Sanctions Motion had been filed—

41

that listed the source of compensation as "Kyle Edwards on behalf of CMNC Homes, LLC" with $1,000 paid prior to filing with no remaining amount due. But even with the amendments, the Rule 2016(b) statements filed in these two cases (both original and amended) materially misrepresented the scope of services that were to be performed.

In the two cases filed after the Day Sanctions Motion was filed, Roosevelt Williams and Gary Hartsell, Attorney Kakol filed Rule 2016(b) statements that incorrectly listed the source of his compensation as only "Kyle Edwards." Attorney Kakol amended these Rule 2016(b) statements to state the source of compensation was "Kyle Edwards on behalf of CMNC Homes, LLC." But once again, the original and amended Rule 2016(b) statements filed in these two cases materially misrepresented the scope of services that were to be performed. And all of the Rule 2016(b) statements Attorney Kakol filed in these two cases falsely certified that he had given these debtors a copy of the Rights and Responsibilities Statement.

## I.  Trial

The trial in this miscellaneous proceeding occurred over the course of two days: April 1, 2026, and April 21, 2026.

### 1.  Attorney Kakol's testimony at trial

Attorney Kakol testified that he has been a member of the Georgia Bar since 1985 and has been disciplined on several occasions by the Georgia Bar.[42]   Apr. 1, 2026, Hearing at 11:19 AM, *In re Kakol*, Miscellaneous Proc. No. 24-00502 (Bankr. N.D. Ga.).  Attorney Kakol also testified that he has been involved in consumer bankruptcy practice since 1988, that he has been involved in thousands of bankruptcy cases, and that his current practice is volume filing Chapter 7 and Chapter 13 debtor cases.  *Id.* at 10:16-10:17 AM & 11:24 AM.  When asked at trial if he considered himself an expert in bankruptcy law, Attorney Kakol testified that he was "just a regular guy."[43]   *Id.* at 11:24 AM.  Attorney Kakol also testified that he is the head of his law firm and that he supervises everyone.  *Id.* at 11:25-11:26 AM.

---

[42] Attorney Kakol also testified that he has three pending complaints against him before the State Bar of Georgia.  Apr. 1, 2026, Hearing at 11:21 AM, *In re Kakol*, Miscellaneous Proc. No. 24-00502 (Bankr. N.D. Ga.). At least two of these complaints are from cases he handled in the Bankruptcy Court for the Northern District of Georgia, and one of them is for James Day's case.

[43] Contrast this with Attorney Kakol's testimony during his deposition in this miscellaneous proceeding that "I think I am a bankruptcy expert."  (Attorney Kakol Dep. 46:19).

43

Concerning the CMNC Debtor cases, Attorney Kakol testified that the CMNC Debtor cases were front-page-only filing and were intended to be dismissed. *Id.* at 10:38-10:39 AM. Attorney Kakol further testified that the CMNC Debtor cases were not designed to work. *Id.* at 2:38-2:39 PM.

Attorney Kakol also testified that he was aware before he filed any bankruptcy cases for the CMNC Debtors that CMNC had a signed contract with each CMNC Debtor to purchase their home or the decedent's estate's home where the CMNC Debtor was an heir and the purported future representative of the decedent's estate. *See id.* at 10:23 AM & 11:56-11:57 AM. Attorney Kakol acknowledged that some of the CMNC Debtors were dealing with the loss of a loved one, were dealing with the financial stress of foreclosure, and that there was a degree of vulnerability with these debtors. *Id.* at 12:13-12:14 PM.

Attorney Kakol further testified that he would not have taken the CMNC Debtor cases if the CMNC Debtors would have asked him to review the contracts they had with CMNC. *Id.* at 10:23 AM. Attorney Kakol further testified that he never referred any of the CMNC Debtors

44

to another attorney to review the contracts they had with CMNC. *Id.* at 11:57 AM.

Attorney Kakol testified that the goal of each CMNC Debtor with their bankruptcy case was to stop the foreclosure so they could sell their home to CMNC. *Id.* at 10:27 AM. Attorney Kakol testified that it was not necessary for him to know how much CMNC was paying the CMNC Debtors for their home for him to achieve each CMNC Debtor's goal of selling their home to CMNC.[44] *Id.* at 10:31-10:32 AM. Attorney Kakol acknowledged that this stated goal of the CMNC Debtors was without the benefit of any advice from him to them regarding their options and the benefit of the automatic stay. *See id.* at 3:04 PM, 3:14-3:15 PM.

Concerning the potential conflict of interest between CMNC and the CMNC Debtors, Attorney Kakol testified that there was no conflict of interest between CMNC's goal of purchasing the CMNC Debtors' homes and the CMNC Debtors' goal of selling their homes to CMNC because there was a "complete alignment of interest." *Id.* at 10:31-10:32 AM. However, Attorney Kakol also testified that he would have left the CMNC

---

[44] Attorney Kakol also testified that he did not know the mortgage balances on the homes CMNC was purchasing from the CMNC Debtors. Apr. 1, 2026, Hearing at 10:55 AM, *In re Kakol*, Miscellaneous Proc. No. 24-00502 (Bankr. N.D. Ga.).

45

Debtors' bankruptcy cases "in a heartbeat" and withdrawn if the CMNC

Debtors would have asked him to review their contracts with CMNC as

there would have been a conflict of interest.  *Id.* at 10:35 AM.  Attorney

Kakol also testified that he disagreed with the Court that there was a

conflict of interest in the *Day* case, and he also disagreed that there was

a conflict of interest in the CMNC Debtor cases.   *See id.* at 12:12-12:13

PM.

Attorney Kakol also testified that the homes CMNC purchased

from the CMNC Debtors "had no market value," *Id.* at 10:26 AM, but that

was based on photos of the homes taken by CMNC that he only saw after

the commencement of this miscellaneous proceeding.[45]  There were no

photos of the CMNC Debtors' homes in Attorney Kakol's case files for the

CMNC Debtors aside from the few case files that had real estate

valuations from websites, which did not show the condition of the homes.

And there is no evidence that Attorney Kakol saw photos of the CMNC

Debtors' homes or knew the condition of the CMNC Debtors' homes prior

---

[45] The photos attached to Edwards' deposition transcript include pictures of some, but not all of the homes and some of the pictures only show clutter.  No one can competently evaluate the equity in a property without also knowing the mortgage balance as well as the condition of the property.  There are many investors in the local foreclosure market looking for these types of properties.  The better evidence showing that the properties did indeed have value in excess of the mortgage and in excess of what CMNC paid for them is shown in Table B (CMNC Net Profit).

to the commencement of this miscellaneous proceeding. Attorney Kakol even admitted that he did not know at the time he filed the bankruptcies whether the CMNC Debtors could have gotten more for their homes at a foreclosure. *See id.* at 3:00-3:01 PM.

Concerning his scope of representation of the CMNC Debtors, Attorney Kakol testified that his representation was limited to stopping the foreclosure sale and that he was not going to get involved with giving the CMNC Debtors advice about their options instead of filing bankruptcy or what they could do with their homes instead of selling them to CMNC.[46] *See id.* at 3:14-3:15 PM. Alarmingly, Attorney Kakol testified "I'm not going to give any more advice" after he stopped the foreclosure sales with the front-page-only bankruptcy petitions. *Id.* at 3:14-3:15 PM.

When asked about the Rule 2016(b) statements and the attorney-client agreements in the CMNC Debtor cases not having limits on the scope of the representation, Attorney Kakol testified that these

---

[46] During a break in Attorney Kakol's testimony, the parties stipulated that the CMNC Debtor case files that have handwritten notes from Attorney Kakol do not reflect any analysis by Attorney Kakol concerning the CMNC Debtors' assets other than there was real property CMNC was purchasing; the CMNC Debtors' liabilities other than there were mortgages on the real properties CMNC was purchasing; the CMNC Debtors' income or expenses; or any discussion of Chapter 13 plans for the CMNC Debtors. Apr. 1, 2026, Hearing at 2:10 PM, *In re Kakol*, Miscellaneous Proc. No. 24-00502 (Bankr. N.D. Ga.).

documents were not tailored for limited representation.[47] *Id.* at 10:38 AM. Attorney Kakol admitted that there was nothing in writing that limited his representation of the CMNC Debtors to just a front-page-only filing. *Id.* at 12:09 PM.

Attorney Kakol also acknowledged that he was the head of his law firm and that he signed the Rule 2016(b) statements filed in the CMNC Debtor cases, and he maintained that any mistakes in the Rule 2016(b) statements were due to his poor proofreading.[48] *See id.* at 10:37 AM. Attorney Kakol also acknowledged that just because the CMNC Debtor cases were front page only, that did not excuse him from filing Rule 2016(b) statements in those cases. *See id.* at 2:39 PM.

Attorney Kakol also made a point during his testimony to complain that he was being singled out for front-page-only filings and that the majority of other law firms in the Northern District of Georgia do front-page-only filings.[49] *Id.* at 12:09-12:10 PM. However, Attorney Kakol also

---

[47] This testimony conflicts with the fact that the Rule 2016(b) statement filed in the Wade Bulter case shows a more limited list of services to be provided and did not include the certification language about the Rights and Responsibilities Statement which demonstrates that Attorney Kakol and his staff knew how to edit what was included in the Rule 2016(b) statement.

[48] Attorney Kakol's staff member Jones testified that Attorney Kakol reviews documents before they are filed. Apr. 1, 2026, Hearing at 3:48–3:49 p.m., *In re Kakol*, Miscellaneous Proc. No. 24-00502 (Bankr. N.D. Ga.).

[49] The Bankruptcy Court for the Northern District of Georgia is usually among the two or three busiest districts in the country with respect to Chapter 13 filings, with more than 800 being filed in this District in May 2026, alone. Yet only a handful of petitions filed by lawyers every month are dismissed

testified that he came to the conclusion after the *Day* order that a front-page-only filing that is not intended to work is not in good faith. *See id.* at 10:45 AM. Attorney Kakol also testified that he no longer does front-page-only filings and that his law firm made changes after the *Day* order. *See id.* at 10:43-10:45 AM.

Lastly, Attorney Kakol testified about how the *Day* suspension impacted his law firm's finances and his personal finances. Attorney Kakol testified that the *Day* suspension greatly impacted his law firm's finances, for example, that the firm's revenues decreased substantially. However, the Court did not receive any evidence concerning Attorney Kakol's law firm's profitability—or lack thereof—before the *Day* suspension other than the evidence presented to the Court showed that Attorney Kakol's law firm had to borrow $75,000 from Eakin in the months *before* the *Day* suspension. (Defs.' Ex. 3).

---

for failure to file information, and some lawyers file Rule 2016(b) statements in those cases and some do not. The Court was not aware of the practice by some to not file Rule 2016(b) statements in these types of cases prior to this miscellaneous proceeding. Regardless of whether other lawyers violate their statutory obligation by not filing such statements, Attorney Kakol should have known better because he has been sanctioned numerous times in the past by the Court for violating his obligations under Rule 2016, so he knew he was required to file those statements. Additionally, the CMNC Debtor cases were not typical filings because the attorney fee was paid by a third-party purchaser of property, and the debtors did not receive the required counseling from an attorney to which they were entitled.

Concerning the impact of the *Day* suspension on Attorney Kakol's personal finances, Attorney Kakol testified that it negatively impacted his personal finances.[50]   However, Attorney Kakol also testified that he had no money in savings or in a retirement account before the *Day* suspension, Apr. 1, 2026, Hearing at 4:15 PM, *In re Kakol*, Miscellaneous Proc. No. 24-00502 (Bankr. N.D. Ga.), just like after the *Day* suspension.

## 2.  Closing arguments made by the parties

The UST went through the facts and explained how Attorney Kakol and his law firm violated numerous Georgia Rules of Professional Conduct and Bankruptcy Code sections and Rules, including 11 U.S.C. § 527. The UST reminded the Court that its rulings in these types of proceedings sets the tone for the practice in the Court.

Attorney Kakol mainly focused on a few points during his closing argument: Attorney Kakol paid a steep price on account of the conduct in *Day*; none of the CMNC Debtors showed up to complain;[51] and the CMNC Debtors were not harmed because they benefited from Attorney Kakol

---

[50] Attorney Kakol's testimony regarding the exact impact of the *Day* suspension on his personal finances was hampered by the fact that he testified that he could not recall the last time he filed a tax return.  Consequently, those types of documents to show income were not produced.  Apr. 1, 2026, Hearing at 4:18 PM, *In re Kakol*, Miscellaneous Proc. No. 24-00502 (Bankr. N.D. Ga).

[51] As discussed in more detail below, the ABA Standards for Imposing Lawyer Sanctions provides that this is neither an aggravating nor mitigating factor.

50

stopping the foreclosures by filing the front-page-only bankruptcy petitions.

## II.   Discussion

### A. Jurisdiction and venue

This Court has jurisdiction over this miscellaneous proceeding under 11 U.S.C. § 105 and 28 U.S.C. §§ 157 and 1334(b).[52] This miscellaneous proceeding also constitutes a core proceeding under 28 U.S.C. § 157(b)(2) because the counts asserted in the Complaint concern bankruptcy statutes and rules and this Court's inherent power; there are no state law claims; and this miscellaneous proceeding arises from the conduct of Attorney Kakol in cases before this Court and, as an attorney, he is an officer of this Court.[53]  *See In re Dobbs*, 535 B.R. 675, 679 & n.1 (Bankr. N.D. Miss. 2015) (citations omitted) (noting that the show cause order proceeding concerning an attorney's violation of bankruptcy statutes and rules and ethical violations was a core proceeding in part because it arose through the attorney's position as an officer of the court).

---

[52] Attorney Kakol and his law firm admitted this Court had jurisdiction over the CMNC Debtor cases and this miscellaneous proceeding.  (Answer ¶ 4).

[53] Attorney Kakol and his law firm admitted that this miscellaneous proceeding is a core proceeding. (Answer ¶ 5).

This Court is also the proper venue for this miscellaneous proceeding under 28 U.S.C. § 1409(a).[54]

## B. Sources of legal authority to impose sanctions and civil penalties

Bankruptcy courts can sanction attorneys based upon the court's inherent authority and 11 U.S.C. § 105, *Ginsberg v. Evergreen Sec., Ltd. (In re Evergreen Sec., Ltd.)*, 570 F.3d 1257, 1273 (11th Cir. 2009), and can impose civil penalties for violating 11 U.S.C. § 526.

This authority to sanction and impose civil penalties applies to violations of rules of professional misconduct. *See Parker v. Parker (In re Parker)*, 485 Fed. Appx. 989, 991-92 (11th Cir. 2012) (citations omitted).

### 1. 11 U.S.C. § 105

11 U.S.C. § 105(a) states in pertinent part that a court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title" including "taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." Under this statute, "a court may impose sanctions if a party violates a court order or

---

[54] Attorney Kakol and his law firm admitted that this Court is the proper venue for this miscellaneous proceeding. (Answer ¶ 6).

rule." *In re Evergreen Sec., Ltd.*, 570 F.3d at 1273 (citation omitted). 11 U.S.C. § 105(a) also empowers this Court "to sanction counsel and to discipline unprofessional conduct." *Cheney v. Watson (In re Recovery L. Grp., APC)*, 670 B.R. 193, 237 (Bankr. E.D. Va. 2025) (citations omitted). "No finding of bad faith is necessary for the Court to exercise its statutory authority to ensure that the provisions of the Bankruptcy Code are given proper effect." *In re Crawford*, Ch. 11 Case No. 14-28923, 2021 Bankr. LEXIS 1152, 2021 WL 1731861, at *6 (Bankr. S.D. Fla. Apr. 29, 2021) (citation omitted); *see also In re Modi*, Ch. 7 Case No. 22-58929, 2023 Bankr. LEXIS 1324, at *16 (Bankr. N.D. Ga. May 17, 2023) ("A finding of bad faith is not required to issue sanctions under section 105(a)." (citation omitted)); *In re Siskind*, Case No. 9:17-CV-81004, 2018 U.S. Dist. LEXIS 15593, 2018 WL 634547, at *3 (S.D. Fla. Jan. 31, 2018) (noting that the bankruptcy court was not required to make a finding of bad faith to impose sanctions under section 105(a)).

"Bankruptcy courts also have authority under section 11 U.S.C. § 105(a) to suspend or disbar attorneys." *In re Gleason*, Case No. 11-62406, 2012 U.S. Dist. LEXIS 17363, 2012 WL 463924, at *3 (S.D. Fla. Feb. 13, 2012) (citing *In re Brooks-Hamilton*, 400 B.R. 238, 246

53

(B.A.P. 9th Cir. 2009)), *aff'd*, 492 Fed. Appx. 86 (11th Cir. 2012); *see also In re Baker*, Ch. 7 Case No. 23-50344, 2023 Bankr. LEXIS 1613, 2023 WL 4139541, at *8 (Bankr. N.D. Ga. June 22, 2023) (citations omitted) (noting that 11 U.S.C. § 105(a) "includes the authority to suspend the bar privileges of attorneys who practice before it"); *L. Sols. of Chi. LLC v. Corbett*, Case No. 1:18-cv-00677, 2019 U.S. Dist. LEXIS 39335, 2019 WL 1125568, at *3 (N.D. Ala. Mar. 12, 2019) (noting that the court's authority under 11 U.S.C. § 105(a) "includes conducting disciplinary proceedings and suspending attorneys from practicing before the court" (citation omitted)), *aff'd on other grounds*, 971 F.3d 1299 (11th Cir. 2020).

### 2. Inherent authority

"Federal courts, including bankruptcy courts, have the inherent power to impose sanctions on parties and lawyers." *Gwynn v. Walker (In re Walker)*, 532 F.3d 1304, 1309 (11th Cir. 2008). "Courts have long recognized an inherent authority to suspend or disbar lawyers." *In re Snyder*, 472 U.S. 634, 643 (1985) (citations omitted); *see also In re Parker*, 485 Fed. Appx. at 992 (noting that the court's inherent authority includes the authority to disbar attorneys). This authority to suspend and disbar applies to law firms. *See In re Recovery L. Grp., APC*, 670 B.R. at 250

54

(noting that the court's inherent authority to suspend and disbar extends to "nonmembers of the bar who engage in unauthorized activities affecting the court" (quoting *Allen v. Fitzgerald*, Case No. 5:18-CV-00057, 2019 U.S. Dist. LEXIS 213990, 2019 WL 6742996, at \*5 (W.D. Va. Dec. 11, 2019))); *Allen v. Fitzgerald*, 590 B.R. 352, 359 (W.D. Va. 2018) ("[T]he bankruptcy court had the inherent authority to prohibit Petitioners— including any nonlawyers and law firms—from practicing in front of it.")

### 3. 11 U.S.C. § 526

11 U.S.C. § 526(c)(5)(B) allows this Court to impose a civil penalty against a person who "intentionally violated this section, or engaged in a clear and consistent pattern or practice of violating this section."[55] 11 U.S.C. § 526(c)(5) provides a bankruptcy court with the authority to disbar an attorney from the practice of law in the bankruptcy court. *Parker v. Jacobs*, 466 B.R. 542, 549 (M.D. Ala. 2012) (citations omitted) ("Disbarment generally is regarded as a civil penalty." (citations omitted)), *aff'd*, 485 Fed. Appx. 989 (11th Cir. 2012).

---

[55] This section is discussed in detail on pages 95-98 of this Order.

### 4. Standard of proof for disbarment

Although the Court has not found an Eleventh Circuit decision stating what the standard of proof is for disbarment when applying the Georgia Rules of Professional Conduct ("Georgia Rules"), the Georgia Rules require clear and convincing evidence in disciplinary proceedings. GA. RULES OF PRO. CONDUCT 4-221.2(b); *see also In re Tuggle*, 892 S.E.2d 761, 776 (Ga. 2023) (citing GA. RULES OF PRO. CONDUCT 4-221.2(b)) (noting that the "State Bar has the burden of proving violations of the GRPC by clear and convincing evidence"). The Fifth Circuit has also noted that clear and convincing evidence is required when the sanction is disbarment. *In re Sealed Appellant*, 194 F.3d 666, 670 (5th Cir. 1999) (citation omitted).

In light of the above authorities, the Court will apply the standard of clear and convincing evidence. In the context of a disbarment proceeding, clear and convincing evidence

> "produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable the fact finder to come to a clear conviction, without hesitancy, of the truth of the precise facts" of the case.

*In re Medrano*, 956 F.2d 101, 102 (5th Cir. 1992) (quoting *Cruzan v. Dir.,*

*Mo. Dep't of Health*, 497 U.S. 261, 285 n.11 (1990)).

### C. Attorney Kakol violated many Georgia Rules.

Attorneys who practice in this Court are governed by the Georgia

Rules, "contained in the Rules and Regulations of the State Bar of

Georgia, and judicial decisions interpreting those rules and standards."

*In re Cabe & Cato, Inc.*, 524 B.R. 870, 878 (Bankr. N.D. Ga. 2014) (citation

omitted).

As will be explained below, Attorney Kakol violated Georgia Rules

1.1, 1.2, 1.3, 1.6, 1.7, 1.8, 3.3, and 5.4.[56]

> **1. Attorney Kakol did not competently represent the CMNC Debtors, impermissibly limited his scope of representation, and failed to act diligently in the CMNC Debtor cases.**
>
> **a. Competence (Georgia Rule 1.1)**

Georgia Rule 1.1[57] deals with competence and states in pertinent

part: "A lawyer shall provide competent representation to a client. . . .

---

[56] As noted above, the cases at issue in this miscellaneous proceeding span a date range where the earliest case was filed on April 4, 2022, and the latest case was filed December 4, 2023. Georgia Rules 1.0, 1.2, and 1.8 were amended during this time frame, and Rule 1.0 was amended further in 2025. However, these amendments are not material to this miscellaneous proceeding. Additionally, these amendments do not substantively impact the portions of the Georgia Rules and comments cited in this Order, but the ordering of defined terms in Georgia Rule 1.0 has changed. For ease of reference, the current version of the Georgia Rules is cited.

[57] The maximum penalty for a violation of Georgia Rule 1.1 is disbarment. GA. RULES OF PRO. CONDUCT 1.1.

Competence requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." GA. RULES OF PRO. CONDUCT 1.1.

Competence in the context of representing a debtor in a bankruptcy case requires an attorney to "analyze the client's financial situation, advise the client about whether to file for bankruptcy and if so, under what chapter, and assist the client in completing the petition, schedules, statements, and other documents necessary for the filing." *Cheney v. Watson (In re Recovery L. Grp., APC)*, 670 B.R. 193, 238 (Bankr. E.D. Va. 2025) (quoting *In re White*, 659 B.R. 68, 79 (Bankr. D.S.C. 2024)). Additionally, the "attorney is required to perform a reasonable inquiry to include interviewing the client, requiring the client to produce relevant information, reviewing the client's financial documents and other information, and resolving any inconsistencies prior to filing the case." *Id.* at 238-39 (quoting *In re Burnett*, Ch. 7 Case No. 21-02018, 2022 Bankr. LEXIS 684, 2022 WL 802586, at *6 (Bankr. D.S.C. Mar. 16, 2022)).

Here, Attorney Kakol did not provide competent representation to the CMNC Debtors because he did none of the above. It is clearly

58

established in the miscellaneous proceeding that Attorney Kakol did not analyze the CMNC Debtors' financial situations. It is also clear that Attorney Kakol did not advise the CMNC Debtors whether they needed to file for bankruptcy and their options in bankruptcy, nor did he complete any schedules or statements in the CMNC Debtor cases, let alone gather any other financial information to properly advise the CMNC Debtors. Also, Attorney Kakol's "interview" of the CMNC Debtors consisted of a short phone call with the purchaser of the CMNC Debtors' property (Edwards, an employee of CMNC) on the phone call. Thus, Attorney Kakol failed to competently represent the CMNC Debtors.

### b. Limited representation (Georgia Rule 1.2)

Attorney Kakol argues that he could limit his representation of the CMNC Debtors to just filing a front-page-only bankruptcy petition because he said that was their goal, albeit a goal arrived at without the benefit of competent legal advice. This constitutes an impermissible limitation on his representation under Georgia Rule 1.2 and this Court's Local Rules.

Georgia Rule 1.2 addresses limitations of representation by attorneys.[58]  Specifically, section (c) of Georgia Rule 1.2 states that "[a] lawyer may limit the scope and objectives of the representation if the limitation is reasonable under the circumstances and the client gives informed consent."  GA. RULES OF PRO. CONDUCT 1.2(c).

Georgia Rule 1.0 defines "reasonable" and "informed consent." "'Reasonable' or 'reasonably' when used in relation to conduct by a lawyer denotes the conduct of a reasonably prudent and competent lawyer."  GA. RULES OF PRO. CONDUCT 1.0(y).  "Informed consent" is defined as "the agreement by a person to a proposed course of conduct after the lawyer has communicated adequate information and explanation about the material risks of and reasonably available alternatives to the proposed course of conduct."  GA. RULES OF PRO. CONDUCT 1.0(n).

The comments to Georgia Rule 1.2 provide helpful insight into the Rule.  The comments state in part:

> [6] The scope of services to be provided by a lawyer may be limited by agreement with the client or by the terms under which the lawyer's services are made available to the client. When a lawyer has been retained by an insurer to represent an insured, for example, the representation may be

---

[58] The maximum penalty for a violation of Georgia Rule 1.2 is disbarment.  GA. RULES OF PRO. CONDUCT 1.2.

60

limited to matters related to the insurance coverage. A limited representation may be appropriate because the client has limited objectives for the representation. In addition, the terms upon which representation is undertaken may exclude specific means that might otherwise be used to accomplish the client's objectives. Such limitations may exclude actions that the client thinks are too costly or that the lawyer regards as repugnant or imprudent.

[7] Although this Rule affords the lawyer and the client substantial latitude to limit the representation, the limitation must be reasonable under the circumstances. If, for example, a client's objective is limited to securing general information about the law the client needs in order to handle a common and typically uncomplicated legal problem, the lawyer and client may agree that the lawyer's services will be limited to a brief telephone consultation. Such a limitation, however, would not be reasonable if the time allotted was not sufficient to yield advice upon which the client could rely. Although an agreement for a limited representation does not exempt a lawyer from the duty to provide competent representation, the limitation is a factor to be considered when determining the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation. *See* Rule 1.1.

GA. RULES OF PRO. CONDUCT 1.2 cmts. 6 & 7.

The Georgia Rules are not the only rules that attorneys practicing before this Court must follow if they wish to limit the representation of their clients. Pursuant to General Order 42-2020 (the "General Order"),

this Court has also adopted its own rules with regard to how and whether attorneys may limit their representation of clients. *See Amended and Restated Order with Regard to Fees, Expenses and Costs of Attorneys for Debtors in Chapter 13 Cases*, General Order No. 42-2020 (Bankr. N.D. GA, January 6, 2021).[59]

The General Order states clearly and concisely that the "**[a]ttorney must represent Debtor in all matters**." *Id.* § 1.0, at 2 (emphasis added). It continues: "Attorneys representing Debtors in Chapter 13 cases must represent the Debtor in all matters related to the case that affect the Debtor's interests unless the attorney is permitted to withdraw by order of the Court." *Id.* As the Court put it in *In re Egwim*, "Regardless of whether a valid limitation on services as between lawyer and client is established, . . . the lawyer must represent the client until withdrawal is permitted." 291 B.R. 559, 574-75 (Bankr. N.D. Ga. 2003). *Egwim* has been the standard of practice in this Court for more than twenty years.

The General Order directs any attorney wishing to limit his or her representation of a client to the Local Rules of the Bankruptcy Court for

---

[59] Future citations to the General Order will be shortened to simply "General Order."

the Northern District of Georgia (the "Local Rules") pertaining to withdrawal from representation.  General Order § 1.0 (Bankr. N.D. Ga. Jan. 6, 2021).  Local Rule 9010-5 delineates, among other things, the rules for withdrawal from representation of a client in a case before this Court.  Section (a) states the withdrawal policy as follows:

> An attorney who has appeared in a case or adversary proceeding, other than for the limited purpose of receiving notices, must obtain permission from the Bankruptcy Court to withdraw as counsel, unless substitute counsel has made an appearance for that party. Counsel may make a fee arrangement limiting the services to be performed without the payment of additional fees, but the failure of the client, including a debtor, to comply with the fee arrangement is merely a ground to seek withdrawal and not a basis on which the attorney may refuse to render services. Counsel will not ordinarily be allowed to withdraw if withdrawal would delay the progress of an adversary proceeding or contested matter.

Bankr. N.D. Ga. R. 9010-5(a).

"Whether an attorney will be permitted to withdraw involves both procedural and substantive issues."  *In re Egwim*, 291 B.R. at 575. Section (b) of Local Rule 9010-5 maps out the procedures that must be followed before an attorney is allowed to withdraw.  That section states that an attorney desiring to withdraw as counsel "must give fourteen days' notice to the client of the attorney's intention to request permission

to withdraw" and "file a motion with the Bankruptcy Clerk requesting permission to withdraw," which the Bankruptcy Clerk will submit to the bankruptcy judge with any responses.  Bankr. N.D. Ga. R. 9010-5(b).

Section (c) of Local Rule 9010-5 provides attorneys with an alternative set of procedures for withdrawal when a client consents.  That section states in pertinent part that

> [a]n attorney wishing to withdraw may be relieved from the requirement to send a notice of intent to withdraw and to file a motion to withdraw by instead filing a Certificate of Consent with the Bankruptcy Clerk that has been signed by the client, the withdrawing attorney, and the substituting attorney, if one has been selected by the client.

Bankr. N.D. Ga. R. 9010-5(c).

"An attorney desiring to limit the scope of an engagement has the burden of demonstrating compliance with all of the conditions required for the validity of the limitation." *In re Egwim*, 291 B.R. at 572.  Aside from ensuring that attorneys follow the appropriate procedures, courts also "have an interest in the proper administration of justice and in having parties before them properly represented." *Id.* at 576.  "For this reason, courts have always limited the right of attorneys to withdraw from a case once they have appeared." *Id.*  Court approval "involves

considerations of fairness, reasonableness and proper protection of debtor's rights based on the circumstances in each case." *Id.* (quoting *In re Pair*, 77 B.R. 976, 979 (Bankr. N.D. Ga. 1987)). Moreover, "counsel cannot be permitted to initiate cases and then simply abandon debtors." *Id.* (quoting *In re Pair*, 77 B.R. at 979).

Beginning with Georgia Rule 1.2, the CMNC Debtors did not give informed consent to the limited representation of nothing more than a front-page-only bankruptcy petition. Informed consent requires communication of "adequate information and explanation about the material risks of and reasonably available alternatives to the proposed course of conduct." *See* GA. RULES OF PRO. CONDUCT 1.0(n). The evidence is clear that Attorney Kakol never advised the CMNC Debtors of their options. There is also no evidence that Attorney Kakol communicated to the CMNC Debtors the consequences of filing bankruptcy.

Additionally, Attorney Kakol did not discuss with the CMNC Debtors their alternatives to filing bankruptcy as he testified that he was not going to get involved in giving the CMNC Debtors advice about alternatives to filing bankruptcy. Instead, Attorney Kakol has taken the position that each CMNC Debtor's alleged goal was to file bankruptcy to

65

stop a foreclosure and sell their home to CMNC.  This, he said, "excused" him from looking at the real estate purchase contracts the CMNC Debtors had with CMNC and analyzing other financial information. Thus, it was impossible for the CMNC Debtors to have given informed consent to the limited representation.

In addition to the CMNC Debtors not giving informed consent to the limited representation, Attorney Kakol's limitation of representation of the CMNC Debtors to the mere filing of a front-page-only bankruptcy petition was unreasonable.  Attorney Kakol's only "advice" to the CMNC Debtors was that they could file bankruptcy and stop a foreclosure. However, many of the CMNC Debtors had already signed a real estate purchase contract with CMNC that required them to file bankruptcy.

Moreover, Attorney Kakol's "advice" was unreasonable because the CMNC Debtors did not know what their options were and Attorney Kakol refused to inform them of their options. Evidence of this limited representation being unreasonable is Teresa Blythe's case where she told Edwards that she wanted to keep her home instead of selling it. Additional evidence is Callie Moore's case where Callie Moore asked Edwards "why didn't you tell me I could have gotten a lot more for this

66

house than what you offered . . . you knew what I was going through and how hard this was for me and you took advantage of that." (UST Ex. 81). Unfortunately, Attorney Kakol never advised Teresa Blythe or Callie Moore of their options instead of selling their homes to CMNC.

Lastly, evidence that Attorney Kakol's limitation on representation was impermissible are the CMNC Debtor cases which have attorney-client agreements and Rule 2016(b) statements. These documents show no such limitation on Attorney Kakol's representation.

Turning to the General Order and the Local Rules, Attorney Kakol also completely ignored the General Order and this Court's procedure for a limited representation that requires withdrawal from the case, which failure also makes this alleged limitation per se unreasonable. The General Order required Attorney Kakol to represent the CMNC Debtors "in all matters," not only the one or ones Attorney Kakol picks and chooses. Had Attorney Kakol followed the procedures in the Local Rules and General Order, this Court would have received either a motion to withdraw or a certificate of consent immediately after the petitions were filed. This would have been ***extremely*** unusual and possibly never seen before in this Court, which would have immediately sounded alarms and

67

likely sparked some investigation by the Chapter 13 Trustee, the UST and the Court through an emergency status conference to inquire into what was going on.

Instead, the effect of failing to follow these procedures was to obscure the supposed "limited representation" to allow the CMNC Debtor cases to fly under the radar. This would avoid any scrutiny into the underlying facts by Court, the Chapter 13 Trustee, or the UST because proper disclosure would have revealed a situation where the CMNC Debtors were not being adequately represented in bankruptcy proceedings.

### c. Diligence (Georgia Rule 1.3)

Georgia Rule 1.3[60] states "A lawyer shall act with reasonable diligence and promptness in representing a client. Reasonable diligence as used in this Rule means that a lawyer shall not without just cause to the detriment of the client in effect willfully abandon or willfully disregard a legal matter entrusted to the lawyer." GA. RULES OF PRO. CONDUCT 1.3.

---

[60] The maximum penalty for a violation of Georgia Rule 1.3 is disbarment. GA. RULES OF PRO. CONDUCT 1.3.

Attorney Kakol did not exercise diligence in representing the CMNC Debtors because he did not obtain the necessary information to adequately represent them and abandoned the CMNC Debtor cases. Attorney Kakol also never filed statements and schedules in the CMNC Debtor cases and failed to respond to deficiency notices by the Court and allowed the CMNC Debtors bankruptcy cases to be dismissed when a different strategy would have potentially been more beneficial. Thus, Attorney Kakol violated Georgia Rule 1.3.

### 2. There was a conflict of interest between CMNC and the CMNC Debtors, and CMNC interfered with Attorney Kakol's professional independence.

Like in *Day*, Attorney Kakol was paid his fee for filing the CMNC Debtor cases from the third party CMNC. While accepting an attorney's fee from a third party is not always impermissible, the third party may have competing interests with the debtor, which can lead to a conflict of interest in the attorney's representation of that debtor.

### a. Conflict of interest (Georgia Rule 1.7)

Georgia Rule 1.7 addresses conflicts of interest generally.[61]   It states in part:

---

[61] The maximum penalty for a violation of Georgia Rule 1.7 is disbarment.  GA. RULES OF PRO. CONDUCT 1.7.

69

> (a) A lawyer shall not represent or continue to represent a client if there is a significant risk that the lawyer's own interests or the lawyer's duties to another client, a former client, or a third person will materially and adversely affect the representation of the client, except as permitted in (b).

GA. RULES OF PRO. CONDUCT 1.7(a).

Sections (b) and (c) of Georgia Rule 1.7 address when the informed consent of a client may permit a lawyer to represent that client in the face of a conflict. Those sections provide:

> (b) If client informed consent is permissible a lawyer may represent a client notwithstanding a significant risk of material and adverse effect if each affected client or former client gives informed consent confirmed in writing[62] to the representation after: (1) consultation with the lawyer, pursuant to Rule 1.0(c);[63] (2) having received in writing reasonable and adequate information about the material risks of and reasonable available alternatives to the representation; and (3) having been given the opportunity to consult with independent counsel.
>
> (c) Client informed consent is not permissible if the

---

[62] Confirmed in writing

> when used in reference to the informed consent of a person, denotes informed consent that is given in writing by the person, or a writing that a lawyer promptly transmits to the person confirming an oral informed consent. . . . If it is not feasible to obtain or transmit the writing at the time the person gives informed consent, then the lawyer must obtain or transmit it within a reasonable time thereafter.

GA. RULES OF PRO. CONDUCT 1.0(d).

[63] "'Consult' or 'consultation' denotes communication of information reasonably sufficient to permit the client to appreciate the significance of the matter in question." GA. RULES OF PRO. CONDUCT 1.0(e).

representation: (1) is prohibited by law or these Rules; (2) includes the assertion of a claim by one client against another client represented by the lawyer in the same or substantially related proceeding; or (3) involves circumstances rendering it reasonably unlikely that the lawyer will be able to provide adequate representation to one or more of the affected clients.

GA. RULES OF PRO. CONDUCT 1.7(b), (c).

The comments to the definition of informed consent from the Georgia Rules provide in part:

> [6] . . . The communication necessary to obtain such consent will vary according to the Rule involved and the circumstances giving rise to the need to obtain informed consent. The lawyer must make reasonable efforts to ensure that the client or other person possesses information reasonably adequate to make an informed decision. Ordinarily, this will require communication that includes a disclosure of the facts and circumstances giving rise to the situation, any explanation reasonably necessary to inform the client or other person of the material advantages and disadvantages of the proposed course of conduct and a discussion of the client's or other person's options and alternatives. In some circumstances it may be appropriate for a lawyer to advise a client or other person to seek the advice of other counsel. A lawyer need not inform a client or other person of facts or implications already known to the client or other person; nevertheless, a lawyer who does not personally inform the client or other person assumes the risk that the client or other person is inadequately informed and the consent is invalid. In determining whether the

71

information and explanation provided are reasonably adequate, relevant factors include whether the client or other person is experienced in legal matters generally and in making decisions of the type involved, and whether the client or other person is independently represented by other counsel in giving the consent. Normally, such persons need less information and explanation than others, and generally a client or other person who is independently represented by other counsel in giving the consent should be assumed to have given informed consent.

[7] Obtaining informed consent will usually require an affirmative response by the client or other person. In general, a lawyer may not assume consent from a client's or other person's silence. Consent may be inferred, however, from the conduct of a client or other person who has reasonably adequate information about the matter.

GA. RULES OF PRO. CONDUCT 1.0 cmts. 6 & 7.

The comments to Georgia Rule 1.7 elucidate the finer points of the Rule and what constitutes a conflict of interest. Pertinent excerpts from the comments on loyalty to a client include:

[1] Loyalty and independent judgment are essential elements in the lawyer's relationship to a client. If an impermissible conflict of interest exists before representation is undertaken the representation should be declined. The lawyer should adopt reasonable procedures, appropriate for the size and type of firm and practice, to determine in both litigation and non-litigation

72

matters the parties and issues involved and to determine whether there are actual or potential conflicts of interest.

[2] Loyalty to a client is impaired when a lawyer cannot consider, recommend or carry out an appropriate course of action for the client because of the lawyer's other competing responsibilities or interests. The conflict in effect forecloses alternatives that would otherwise be available to the client. Paragraph (a) addresses such situations. A possible conflict does not itself preclude the representation. The critical questions are the likelihood that a conflict will eventuate and, if it does, **whether it will materially interfere with the lawyer's independent professional judgment in considering alternatives or foreclose courses of action that reasonably should be pursued on behalf of the client**. Consideration should be given to whether the client wishes to accommodate the other interest involved.

GA. RULES OF PRO. CONDUCT 1.7 cmts. 1 & 2 (emphasis added).

The comments on conflicts related to a lawyer's own interests and the interests of third parties paying for a lawyer's services also provide helpful insight pertinent to the facts of this case. Those comments state:

[6] The lawyer's personal or economic interests should not be permitted to have an adverse effect on representation of a client. *See* Rules 1.1 and 1.5. If the propriety of a lawyer's own conduct in a transaction is in serious question, it may be difficult or impossible for the lawyer to give a client objective advice. A lawyer may not allow related business interests to affect representation,

for example, by referring clients to an enterprise in which the lawyer has an undisclosed interest.

. . . .

[10] A lawyer may be paid from a source other than the client, if the client is informed of that fact and gives informed consent and the arrangement does not compromise the lawyer's duty of loyalty to the client. *See* Rule 1.8(f). For example, when an insurer and its insured have conflicting interests in a matter arising from a liability insurance agreement, and the insurer is required to provide special counsel for the insured, the arrangement should assure the special counsel's professional independence. So also, when a corporation and its directors or employees are involved in a controversy in which they have conflicting interests, the corporation may provide funds for separate legal representation of the directors or employees, if the clients give informed consent and the arrangement ensures the lawyer's professional independence.

GA. RULES OF PRO. CONDUCT 1.7 cmts. 6 & 10.

### b. Conflict of interest: prohibited transactions (Georgia Rule 1.8)

Georgia Rule 1.8 addresses conflicts of interest and prohibited transactions, such as transactions where a third-party pays a lawyer's fee. Section (f) of Georgia Rule 1.8 provides:

(f) A lawyer shall not accept compensation for representing a client from one other than the client unless: (1) the client gives informed consent; (2) there is no interference with the lawyer's independence of professional judgment or with the

74

client-lawyer relationship; and (3) information relating to representation of a client is protected as required by Rule 1.6.[64]

GA. RULES OF PRO. CONDUCT 1.8(f).[65]

The comment to section (f) of Georgia Rule 1.8 states:

[5] Lawyers are frequently asked to represent a client under circumstances in which a third person will compensate the lawyer, in whole or in part. The third person might be a relative or friend, an indemnitor (such as a liability insurance company) or a co-client (such as a corporation sued along with one or more of its employees). **Because third-party payers frequently have interests that differ from those of the client**, including interests in minimizing the amount spent on the representation and in learning how the representation is progressing, **lawyers are prohibited from accepting or continuing such representations unless the lawyer determines that there will be no interference with the lawyer's independent professional judgment and there is informed consent from the client.** *See also* Rule 5.4(c) (prohibiting interference with a lawyer's professional judgment by one who recommends, employs or pays the lawyer to render legal services for another).

---

[64] Georgia Rule 1.6 deals with confidentiality of client information. It states in part:

(a) A lawyer shall maintain in confidence all information gained in the professional relationship with a client, including information which the client has requested to be held inviolate or the disclosure of which would be embarrassing or would likely be detrimental to the client, unless the client gives informed consent, except for disclosures that are impliedly authorized in order to carry out the representation, or are required by these rules or other law, or by order of the court.

GA. RULES OF PRO. CONDUCT 1.6(a).

[65] The maximum penalty for a violation of Georgia Rule 1.8(f) is a public reprimand.   GA. RULES OF PRO. CONDUCT 1.8.

75

GA. RULES OF PRO. CONDUCT 1.8 cmt. 5 (emphasis added).

### c. Professional independence of a lawyer (Georgia Rule 5.4)

Lastly, Georgia Rule 5.4 addresses the professional independence of a lawyer. That rule states in part that "[a] lawyer shall not permit a person who recommends, employs, or pays the lawyer to render legal services for another to direct or regulate the lawyer's professional judgment in rendering such legal services." GA. RULES OF PRO. CONDUCT 5.4(c).[66]

### d. Attorney Kakol violated Georgia Rules 1.7, 1.8, and 5.4.

Attorney Kakol argues that there was no conflict of interest by CMNC paying his fee for the nineteen CMNC Debtor cases because the interest of CMNC and the CMNC Debtors were completely aligned. However, "Multiple representation by a lawyer in a transaction between a buyer and seller has been characterized as the clearest instance of improper representation of conflicting interests."  4 RONALD E. MALLEN, LEGAL MALPRACTICE § 34:12 (2026 ed.), Westlaw (footnote omitted).

Attorney Kakol receiving his fee from CMNC for the CMNC Debtor

---

[66] The maximum penalty for a violation of Georgia Rule 5.4 is disbarment.  GA. RULES OF PRO. CONDUCT 5.4.

cases impaired his loyalty to his client, interfered with his professional judgment, and materially and adversely affected his representation of the CMNC Debtors. This is a direct violation of Georgia Rules 1.7 and 1.8. Attorney Kakol also allowed the third party (CMNC) to direct or regulate his representation of the CMNC Debtors in violation of Georgia Rule 5.4.

Attorney Kakol violated Georgia Rule 1.7(a) because he allowed his own interest in receiving his fee from CMNC and "preventing" a conflict of interest from arising between CMNC and the CMNC Debtors to limit his ability to "consider, recommend or carry out an appropriate course of action" for the CMNC Debtors, which "materially and adversely affect[ed] the representation." *See* GA. RULES OF PRO. CONDUCT 1.7(a) & cmt. 2. This is evident by Attorney Kakol's testimony that (a) he would not have taken the CMNC Debtor cases if he was asked to review the real estate purchase contracts because it would have been a conflict of interest and (b) that he would have withdrawn from the CMNC Debtor cases if the CMNC Debtors asked him about their real estate purchase contracts with CMNC because a conflict of interest would have been present. Ultimately, Attorney Kakol's perceived "duties" to the "third person"

77

(CMNC) that paid his fee "foreclose[d] courses of action that reasonably should [have been] pursued."  *See* GA. RULES OF PRO. CONDUCT 1.7(a) & cmt. 2.

Attorney Kakol also violated Georgia Rule 1.7(b).  In the face of the glaring conflict of interest, there is no evidence of informed consent from the CMNC Debtors.  First, there is no evidence that the CMNC Debtors consulted Attorney Kakol concerning the significant risk of the conflict of interest between CMNC and the CMNC Debtors.  Instead, Attorney Kakol testified that he was not going to get involved with giving the CMNC Debtors advice about their options.  Second, there is no evidence that Attorney Kakol provided in writing to the CMNC Debtors "reasonable and adequate information about the material risks of and reasonable available alternatives to the representation." GA. RULES OF PRO. CONDUCT 1.7(b)(2).  Lastly, nothing at all indicates that the CMNC Debtors were given an "opportunity to consult with independent counsel." GA. RULES OF PRO. CONDUCT 1.7(b)(3).

Attorney Kakol accepting his attorney fee from Edwards on behalf of CMNC in the CMNC Debtor cases without obtaining informed consent, without preventing interference with his independence and professional

78

judgment or the client-lawyer relationship, and without shielding information relating to the representation of the CMNC Debtors constitutes a violation of Georgia Rule 1.8(f).

Attorney Kakol does not meet a single requirement of the three under Georgia Rule 1.8(f). First, none of the CMNC Debtors gave informed consent to this arrangement. Second, there was interference with Attorney Kakol's independence of professional judgment and with the client-lawyer relationship. This is evident by Attorney Kakol's testimony that he would have withdrawn from CMNC Debtor cases if the CMNC Debtors asked him about their real estate purchase contracts with CMNC. Additionally, Edwards' text messages with some of the CMNC Debtors show how CMNC interfered with the client-lawyer relationship by Edwards telling the CMNC Debtors that he and the CMNC Debtor would call Attorney Kakol to discuss an issue.

Lastly, information relating to the representation of the CMNC Debtors was hardly protected as required by Georgia Rule 1.6.[67] From the beginning of the "representation" Edwards was present. Edwards

---

[67] "Rule 1.6 applies not merely to matters communicated in confidence by the client but also to all information gained in the professional relationship, whatever its source. A lawyer may not disclose such information except as authorized or required by the Rules of Professional Conduct or other law." GA. RULES OF PRO. CONDUCT 1.6 cmt. 5.

was present during every first phone call between Attorney Kakol and the CMNC Debtors.  Attorney Kakol also texted Edwards information about some of the CMNC Debtor cases.  Attorney Kakol's staff member Eakin did this as well.

Attorney Kakol also allowed the third-party payer (CMNC) to regulate his professional judgment in rendering legal services in violation of Georgia Rule 5.4(c).  Anytime Attorney Kakol filed a bankruptcy case for a CMNC Debtor, he did so at the request of Edwards at CMNC. In each instance, Edwards reached out to Attorney Kakol and asked if he could file a bankruptcy to stop a foreclosure.  Each time, Edwards set up a three-way call with Attorney Kakol and the CMNC Debtor and he remained on the line for the entire call.  Edwards "drove the train" in these cases. This is also evident by Attorney Kakol's staffs' Best Case notes where there are notes that Attorney Kakol's staff called Edwards to see if he wanted Attorney Kakol to refile Sandra Byrd's bankruptcy case and that Edwards wanted Lottie Harmon's bankruptcy case filed by a specific date.

Attorney Kakol was also aware that CMNC had an interest in purchasing the CMNC Debtors' homes, and if Attorney Kakol actually

80

provided competent representation to the CMNC Debtors and advised them of their options, Edwards would not have been happy and would probably not have sent any further cases to him.   With those considerations at the front of his mind, Attorney Kakol allowed Edwards to "direct or regulate" his "professional judgment in rendering legal services" to the CMNC Debtors in violation of Georgia Rule 5.4. *See* GA. RULES OF PRO. CONDUCT 5.4(c).

Attorney Kakol argues that the CMNC Debtors signed the contracts with CMNC before he got involved and that he was not hired to evaluate whether going through with the contracts was a good idea for the CMNC Debtors.  This is precisely the problem. CMNC hired Attorney Kakol to file the bankruptcy cases for the CMNC Debtors, and CMNC "direct[ed]" the representation.  Edwards was also present for the initial phone call that Attorney Kakol had with each CMNC Debtor, which had the effect of "regulat[ing]" his "professional judgment." *See* GA. RULES OF PRO. CONDUCT 5.4(c).

### 3. Attorney Kakol violated Georgia Rule 3.3 by filing false Rule 2016(b) statements.

Georgia Rule 3.3 deals with a lawyer's duty of candor to the tribunal.  Georgia Rule 3.3(a) states in pertinent part that "A lawyer shall

81

not knowingly: (1) make a false statement of material fact or law to a tribunal." GA. RULES OF PRO. CONDUCT 3.3(a)(1). "Knowingly . . . denotes actual knowledge of the fact in question.  A person's knowledge may be inferred from the circumstances."  GA. RULES OF PRO. CONDUCT 1.0(o).

The comments to Georgia Rule 3.3 instruct that the Rule "sets forth the special duties of lawyers as officers of the court to avoid conduct that undermines the integrity of the adjudicative process" and that "[t]here are circumstances where failure to make a disclosure is the equivalent of an affirmative misrepresentation." GA. RULES OF PRO. CONDUCT 3.3 cmts. 2 & 3.  Further, submission of a sworn statement to a court containing false information violates the duty of candor. *See In re Branan*, 798 S.E.2d 218, 218-19 (Ga. 2017).

Attorney Kakol violated Georgia Rule 3.3(a)(1).  First, Attorney Kakol's failure to file the required Rule 2016(b) statements until compelled to do so—especially after he had been sanctioned numerous times in the past for violating the Rule—is the equivalent of an affirmative misrepresentation in this situation.  Second, every Rule 2016(b) statement he filed in the CMNC Debtor cases was a false statement about the scope of services he was to provide to the CMNC

82

Debtors.  Third, in seventeen of the eighteen CMNC Debtors Chapter 13 cases, Attorney Kakol's Rule 2016(b) statement also falsely certified that he had given the CMNC Debtor a copy of the Rights and Responsibilities Statement.  Lastly, some of the Rule 2016(b) statements – even some filed after the UST put Attorney Kakol on written notice of its investigation into his conduct in *Day* – contained knowingly false statements about the source of his compensation being the Debtor or Edwards instead of CMNC.

Attorney Kakol also knew when he filed the Rule 2016(b) statements in the CMNC Debtor cases that they were false.  Attorney Kakol cannot escape his violations of Georgia Rule 3.3(a)(1) by arguing the CMNC Debtor cases were front-page-only filings where the Rule 2016(b) statements were not tailored to this purported "limited representation."  The software on which these statements are produced is a fillable form which can easily be edited.

Nor can Attorney Kakol escape violating Georgia Rule 3.3(a)(1) by blaming the Rule 2016(b) statements on his poor proofreading. The false statements contained within the Rule 2016(b) statements were not isolated grammatical or punctuation mistakes but consisted of more than

83

100 words and stretched over the course of two pages. It was obvious on their face that they were materially inaccurate.

Further, because of Attorney Kakol's prior history of being sanctioned numerous times for Rule 2016(b) statement violations, he was all too aware of the importance of not just filing these statements but making them materially accurate. Yet he knowingly filed materially false Rule 2016(b) statements even after the UST notified him it was conducting an investigation of his conduct in *Day* and then after the UST filed the Day Sanctions Motion. Thus, Attorney Kakol knowingly violated Georgia Rule 3.3(a)(1).

### D. Attorney Kakol failed to follow the Bankruptcy Code, Rule 2016, and this Court's General Order.

Attorneys filing Chapter 7 and Chapter 13 cases must also abide by certain rules and regulations and make various disclosures.

### 1. Attorney Kakol failed to comply with the Rights and Responsibilities Statement requirement of the General Order.

The Rights and Responsibilities Statement refers to a document that outlines various topics debtors and their attorneys must discuss and actions debtors and their attorneys must undertake before filing and during the pendency of a Chapter 13 case. General Order § 8.0 & Ex. A

(Bankr. N.D. Ga. Jan. 6, 2021). Additionally, before filing a Chapter 13 petition, the attorney for the debtor must provide the debtor with a copy of the Rights and Responsibilities Statement. General Order § 8.0 (Bankr. N.D. Ga. Jan. 6, 2021). The attorney for the debtor must also certify in the Rule 2016(b) statement that the attorney provided the debtor with a copy of the Rights and Responsibilities Statement. *Id.*

Pursuant to the Rights and Responsibilities Statement, attorneys representing Chapter 13 debtors must undertake the following obligations prior to filing the petition:

1. Personally counsel Debtor regarding the advisability of filing either a Chapter 13 or a Chapter 7 case, discuss with Debtor the procedures in both Chapters, as well as nonbankruptcy options, and answer Debtor's questions.

2. Personally explain to Debtor the requirement of obtaining a certificate from an approved nonprofit budget and credit counseling agency.

3. Personally explain to Debtor that the attorney is being engaged to represent Debtor on all matters arising in the case and explain how and when the attorney's fees and the trustee's fees are determined and paid.

4. Personally review with Debtor and obtain Debtor's signature on the completed petition, plan, as well as the Statement of Financial Affairs,

85

Income and Expenses, and other statements as well as the various schedules (the "Schedules"), and all amendments thereto, whether filed with the petition or later. The Schedules may be prepared initially with the help of clerical or paralegal staff of the attorney's office, but personal attention of the attorney is required for the review and signing by Debtor.

5. Timely prepare and file Debtor's petition, plan, Schedules, statement of monthly net income, and any other required pleading.

6. Explain to Debtor how, when and where to make all necessary payments, including both payments that must be made directly to creditors and payments that must be made to the Chapter 13 Trustee, with particular attention to housing, vehicle, and domestic support obligation payments.

7. Advise Debtor of the need to maintain appropriate insurance especially for house and vehicle.

8. Inform Debtor of the need to potentially provide attorney with copies of each Federal income tax return (or transcript of the return) for each tax year ending while the Debtor is in the case.

General Order, Ex. A, 2 (Bankr. N.D. Ga. Jan. 6, 2021) (footnotes omitted).

Attorney Kakol's testimony and the case files he produced for the CMNC Debtor cases show that he did not comply with the Rights and Responsibilities Statement requirement of the General Order. First, as

86

explained above, Attorney Kakol did not advise the CMNC Debtors on their non-bankruptcy options, or the advisability of filing a Chapter 7 or Chapter 13 case, or the procedures in those types of cases. Second, Attorney Kakol never prepared and filed the CMNC Debtors' schedules and plan, let alone gather the requisite information to adequately advise the CMNC Debtors about filing for bankruptcy relief. Lastly, Attorney Kakol also did not provide a written copy of the Rights and Responsibilities Statement to seventeen of the eighteen CMNC Debtors in Chapter 13 cases even though he falsely certified that he did so in the Rule 2016(b) statements he filed in those CMNC Debtor cases. Thus, Attorney Kakol violated the General Order.

### 2. Attorney Kakol failed to comply with 11 U.S.C. §§ 527 and 528.

Attorney Kakol has admitted in his Answer to the Complaint that one or more of the CMNC Debtors qualified as "assisted person[s]"[68] under 11 U.S.C. § 101(3), and Attorney Kakol and his law firm acted as

---

[68] An "assisted person" is defined as a person "whose debts consist primarily of consumer debts and the value of whose nonexempt property is less than" $226,850 (for cases filed between March 27, 2022, and June 20, 2022) and $256,800 (for cases filed on June 21, 2022, and afterwards). *See* 11 U.S.C. § 101(3) (March 27, 2022, through June 20, 2022, version of statute for $226,850 amount); 11 U.S.C. § 101(3) (June 21, 2022, through current version of statute for $256,800 amount).

87

a "debt relief agency"[69] under 11 U.S.C. § 101(12A).[70] Upon the Courts review of the record, including the petitions filed in the twenty two cases in this miscellaneous proceeding, it appears that at least sixteen of the CMNC Debtors qualified as assisted persons[71] and Attorney Kakol and his law firm acted as a debt relief agency.  Had Attorney Kakol performed the required due diligence to provide the CMNC Debtors the financial analysis which they were entitled to receive, the record would have been clearer on this issue with respect to all of the CMNC Debtors.   Thus, 11 U.S.C. §§ 526-528 apply to Attorney Kakol and his law firm with respect to at least sixteen of the CMNC Debtors.

### a. 11 U.S.C. § 527

Under 11 U.S.C. § 527(a)(1), debt relief agencies must provide to their clients a written notice containing "a brief description of [] (A)

---

[69] "The term 'debt relief agency' means any person who provides any bankruptcy assistance to an assisted person in return for the payment of money or other valuable consideration . . . ."  11 U.S.C. § 101(12A); *see also Milavetz, Gallop & Milavetz, P.A. v. United States*, 130 U.S. 1324, 1333-34 (2010) (attorneys are debt relief agencies when they provide qualifying services to assisted persons).

[70] *See* (Compl. ¶¶ 26-27); (Answer ¶¶ 26-27) (admitting the allegations in paragraphs 26-27 of the Complaint that one or more of the CMNC Debtors was an "assisted person" and that Attorney Kakol acted as a "debt relief agency" in one or more of the CMNC Debtor cases).  "[A] party is bound by the admissions in his pleadings."  *Best Canvas Prods. & Supplies, Inc. v. Ploof Truck Lines, Inc.*, 713 F.2d 618, 621 (11th Cir. 1983) (citations omitted).

[71] The five debtors where it is unclear whether they qualify as assisted persons are Christy Fowler, Wade Butler, Tavius Maddox, Jr., Yung Lai, and Gunther Czarnecki.  It is not clear whether these debtors qualify as assisted persons because their assets are listed on their bankruptcy petitions as being worth between $100k-$500k.  None of these debtors' bankruptcy filings contain any schedules or statements to calculate whether they were assisted persons. For purposes of this Order, the Court will exclude Leonard Henderson as an "assisted person."

chapters 7, 11, 12, and 13, and the general purpose, benefits, and costs of proceeding under each of those chapters; and (B) the types of services available from credit counseling agencies[.]" 11 U.S.C. § 527(a)(1); 11 U.S.C. § 342(b)(1). 11 U.S.C. § 527(a)(2) requires debt relief agencies to provide a "clear and conspicuous written notice" to assisted persons regarding, among other things, the importance of accurate and complete disclosures of information provided in the petition and other filings in a bankruptcy case. *See* 11 U.S.C. § 527(a)(2). Debt relief agencies must maintain a copy of the notices required under subsection (a) for two years. 11 U.S.C. § 527(d).

11 U.S.C. § 527(b) further provides that debt relief agencies shall provide to assisted persons, at the same time as the notices required under 11 U.S.C. § 527(a)(1), a written statement that contains information such as the debtor's bankruptcy options. *See* 11 U.S.C. § 527(b); *In re Dobbs*, 535 B.R. 675, 684 (Bankr. N.D. Miss. 2015) ("§ 527 requires that attorneys provide a statement with information about bankruptcy assistance services, so as to ensure that debtors are able to make an informed decision as to whether or not to file." (citing 11 U.S.C. § 527(b)). The written statement "shall be clear and conspicuous and

89

shall be in a single document separate from other documents or notices provided to the assisted person." 11 U.S.C. § 527(b)

Attorney Kakol violated 11 U.SC. § 527(a) and (b). In the sixteen case files produced for the CMNC Debtors who clearly qualified as assisted persons, there is no written notice which complies with 11 U.S.C. § 527(a)(1). In addition to violating 11 U.S.C. § 527(a)(1), Attorney Kakol also violated 11 U.S.C. § 527(a)(2) in David Jennings' case and Teresa Blythe's case because (1) they qualified as assisted persons and (2) there was no written notice which complied with 11 U.S.C. § 527(a)(2) in the case files produced for each case. Attorney Kakol violated 11 U.S.C. § 527(b) for the sixteen CMNC Debtors who qualified as assisted persons because he failed to provide the written notice required under that section. Therefore, Attorney Kakol violated 11 U.S.C. § 527(a) and (b).

### b. 11 U.S.C. § 528

11 U.S.C. § 528(a) states in pertinent part that a debt relief agency shall

> (1) not later than 5 business days after the first date on which such agency provides any bankruptcy assistance services to an assisted person, but prior to such assisted person's petition under this title being filed, execute a written

90

contract with such assisted person that explains clearly and conspicuously—

> (A) the services such agency will provide to such assisted person; and

> (B) the fees or charges for such services, and the terms of payment;

(2) provide the assisted person with a copy of the fully executed and completed contract.

Of the seventeen case files produced for the CMNC Debtor cases,[72] four of them did not contain an attorney-client agreement. These CMNC Debtors are Christy Fowler, David Jennings, Teresa Blythe, and Tavius Maddox. Thus, Attorney Kakol violated 11 U.S.C. § 528(a)(1)-(2) with respect to David Jennings and Teresa Blythe (who qualify as assisted persons) because there is no written contract specifying the services Attorney Kakol and his firm were to provide and the fee for such services.

### 3. Attorney Kakol failed to timely, properly, and accurately file Rule 2016(b) statements.

Both 11 U.S.C. § 329(a) and Rule 2016(b) mandate that an attorney file a statement disclosing the facts and circumstances of the attorney's compensation in the case. Within fourteen days of filing the petition,

---

[72] Attorney Kakol did not produce case files for CMNC Debtors Wade Butler or Joshua Back. The Court also did not receive any evidence on whether there were attorney-client agreements in these two cases.

attorneys must file a statement disclosing "the compensation paid or agreed to be paid" within the previous year "for services rendered or to be rendered in contemplation of or in connection with the case by such attorney and the source of compensation." *See* 11 U.S.C. § 329(a); FED. R. BANKR. P. 2016(b). A debtor's attorney must "lay bare all its dealings . . . regarding compensation . . . . Counsel's fee revelations must be direct and comprehensive. Coy, or incomplete disclosures . . . are not sufficient." *Jensen v. U.S. Tr. (In re Smitty's Truck Stop, Inc.)*, 210 B.R. 844, 848 (B.A.P. 10th Cir. 1997) (quoting *Neben & Starrett, Inc. v. Chartwell Fin. Corp. (In re Park-Helena Corp.)*, 63 F.3d 877, 881 (9th Cir. 1995)).

Regardless of the source of payment and regardless of whether the attorney seeks payment from the estate or another source, the disclosures of fee arrangements must be full and complete. *See* 11 U.S.C. § 329(a); FED. R. BANKR. P. 2016(b); *Mapother & Mapother, P.S.C. v. Cooper (In re Downs)*, 103 F.3d 472, 479 (6th Cir. 1996). The precise nature of the fee arrangement must be disclosed, not merely the identity of the ultimate owner of the funds. *In re Park-Helena Corp.*, 63 F.3d at 881 (citations omitted). Pursuant to the General Order, the Rule 2016(b) statement must "[d]escribe all fees, expenses and costs received before

92

the filing of the case and the amounts and method of any future payments[.]" General Order § 5.2 (Bankr. N.D. Ga. Jan. 6, 2021).

It is clear that Attorney Kakol failed to comply with these provisions. First, in the majority of the CMNC Debtor cases, Attorney Kakol did not file a Rule 2016(b) statement until months after the case was *dismissed* and only after the UST had filed the Day Sanctions Motion.[73]  This failure occurred even though Attorney Kakol has been sanctioned by this Court numerous times in the past for failing to file Rule 2016(b) statements.

Second, the Rule 2016(b) statements Attorney Kakol filed in every CMNC Debtors case were materially false about the scope of legal services he was going to render to the CMNC Debtor.  Attorney Kakol never intended to "render legal service for all aspects of the bankruptcy case[s.]"  Additionally, the Rule 2016(b) statements filed in all of the CMNC Debtor cases except those of Demetrias Benton and maybe Joshua Back,[74] were materially false because Attorney Kakol certified that he

---

[73] Attorney Kakol never filed a Rule 2016(b) statement in Yung Lai's case and Gunther Czarnecki's case.  The Court would inquire into that in a separate show cause hearing on those cases if the Court ordered a lesser sanction in this miscellaneous proceeding.

[74] The Court includes Joshua Back in this list solely because Attorney Kakol did not produce a case file for Joshua Back, and there is no evidence that Attorney Kakol provided Joshua Back with a copy of the Rights and Responsibilities Statement.

had given the Debtor a copy of the Rights and Responsibilities Statement.

Third, the Rule 2016(b) statements filed in Richard Antrican's case and Wade Butler's case falsely listed the amount of compensation Attorney Kakol was to receive.

Fourth, the original Rule 2016(b) statements filed in the cases of Roosevelt Williams and Gary Hartsell were materially false because they both listed the source of compensation as "Kyle Edwards" with no mention of CMNC. Attorney Kakol subsequently amended these Rule 2016(b) statements to disclose that the source of compensation was "Kyle Edwards on behalf of CMNC Homes, LLC" but these amended Rule 2016(b) statements were still materially false concerning the legal services Attorney Kakol was to provide the Debtors and that Attorney Kakol had provided each Debtor with a copy of the Rights and Responsibilities Statement.

Lastly, the original Rule 2016(b) statements Attorney Kakol filed in the cases of Demetrias Benton and Joshua Back were materially false because they listed the source of compensation as the Debtor and that $1,000 had been paid prior to filing with $4,030 due. And these were filed with knowingly false and material information even after the UST had

94

put Attorney Kakol on written notice it was looking into similar conduct in *Day*. In both of these cases, Attorney Kakol filed amended Rule 2016(b) statements in December of 2023 that listed the source of compensation as "Kyle Edwards on behalf of CMNC Homes, LLC" with $1,000 paid prior to filing with no remaining amount due. Once again, though, these amended Rule 2016(b) statements were materially false in regard to legal services Attorney Kakol was to provide these Debtors.

### 4. Attorney Kakol intentionally violated 11 U.S.C. § 526 or engaged in a clear and consistent pattern of violating 11 U.S.C. § 526.

11 U.S.C. § 526(a) states in pertinent part:

A debt relief agency shall not—

> (1) fail to perform any service that such agency informed an assisted person or prospective assisted person it would provide in connection with a case or proceeding under this title;
>
> (2) make any statement . . . in a document filed in a case or proceeding under this title, that is untrue or misleading, or that upon the exercise of reasonable care, should have been known by such agency to be untrue or misleading;
>
> (3) misrepresent to any assisted person or prospective assisted person, directly or indirectly, affirmatively or by material omission, with respect to—

95

> > (A) the services that such agency will
> > provide to such person; or
>
> > (B) the benefits and risks that may result
> > if such person becomes a debtor in a case
> > under this title.

If a debt relief agency intentionally violated 11 U.S.C. § 526 "or engaged in a clear and consistent pattern or practice of violating" 11 U.S.C. § 526, the court can impose a civil penalty against the debt relief agency. 11 U.S.C. § 526(c)(5). Attorney Kakol did both.

Concerning intent, "'[b]ecause direct evidence of intent is rarely available, a court may infer intent from the totality of the circumstances,' and reckless indifference may be sufficient to establish intent in some cases." *L. Sols. of Chi. LLC v. Corbett*, Case No. 1:18-cv-00677, 2019 U.S. Dist. LEXIS 39335, 2019 WL 1125568, at *7 (N.D. Ala. Mar. 12, 2019) (citation modified) (quoting *In re DeJulio*, 322 B.R. 456, 461 (Bankr. M.D. Fla. 2005)), *aff'd*, 971 F.3d 1299 (11th Cir. 2020).

The Court finds that Attorney Kakol intentionally violated 11 U.S.C. § 526(a)(2) by filing Rule 2016(b) statements that he knew contained materially untrue statements. Attorney Kakol's intent is evidenced by the fact that he admitted to reviewing the Rule 2016(b)

96

statements before they were filed; almost all of the portions of the Rule 2016(b) statement form the attorney fills in contained untrue statements; and Attorney Kakol filed them even after the UST notified him in writing that it was investigating his conduct in *Day*, including the terms of his fee agreement with CMNC and James Day.

There are numerous examples of Attorney Kakol's intent. First, it is undisputed that all of the Rule 2016(b) statements Attorney Kakol filed in the CMNC Debtor cases listed services he knew he never intended to provide the CMNC Debtors. Second, the vast majority of the Rule 2016(b) statements Attorney Kakol filed in the CMNC Debtor cases contained the knowingly untrue statement that he had provided the CMNC Debtor with a copy of the Rights and Responsibilities Statement. Lastly, after being put on written notice of UST investigation of his conduct in *Day*, Attorney Kakol still made the knowingly false representation in the Rule 2016(b) statements in the cases of Demetrias Benton and Joshua Back that his fee was paid by the debtors as opposed to CMNC.

In addition to, or in the alternative to, the finding that Attorney Kakol intentionally violated 11 U.S.C. § 526(a)(2), at the bare minimum, Attorney Kakol "engaged in a clear and consistent pattern or practice" of

97

filing knowingly false Rule 2016(b) statements because every single Rule 2016(b) statement he filed in the CMNC Debtor cases contained at least one materially untrue statement.

### E. Attorney Kakol's acts constitute bad faith and subject him to this Court's inherent power.

Attorney Kakol acted in bad faith by: (1) failing to make a reasonable investigation into the facts of the CMNC Debtors' financial situations and underlying facts and never intending to properly advise the CMNC Debtors as required by law; (2) filing the bankruptcy petitions in the CMNC Debtor cases with no intent of ever properly prosecuting the cases, not timely filing Rule 2016(b) statements, and not voluntarily dismissing the cases; and (3) filing knowingly false Rule 2016(b) statements.

"To impose sanctions under the court's inherent power, the court must find bad faith." *Ginsberg v. Evergreen Sec., Ltd.* (*In re Evergreen Sec., Ltd.*), 570 F.3d 1257, 1273 (11th Cir. 2009) (citation omitted). "A finding of bad faith is warranted where an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent. A party also demonstrates bad faith by delaying or disrupting the litigation or hampering enforcement

98

of a court order." *Id.* at 1273-74 (quoting *Gwynn v. Walker (In re Walker)*, 532 F.3d 1304, 1309 (11th Cir. 2008)). Additionally, in egregious cases, "the pursuit of a claim without reasonable inquiry into the underlying facts can be the basis for a finding of bad faith." *Id.* at 1274 (quoting *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998)). Lastly, "A consistent failure to disclose and pattern of misrepresentations may demonstrate bad faith if it rises to the level of a systemic abuse of process." *In re Nilhan Devs., LLC*, Ch. 11 Case No. 15-58443, 2021 Bankr. LEXIS 1632, 2021 WL 2546032, at *6 (Bankr. N.D. Ga. June 21, 2021) (citation omitted).

### 1. Attorney Kakol failed to make a reasonable inquiry into the CMNC Debtors' financial situation and underlying facts.

Attorney Kakol did not make a reasonable inquiry into the CMNC Debtors' financial situation and underlying facts before filing the bankruptcy petitions. It is clear that Attorney Kakol did not gather sufficient information from the CMNC Debtors concerning their financial situations. The parties stipulated during trial that Attorney Kakol's handwritten notes in the case files produced for the CMNC Debtors show no analysis concerning the CMNC Debtors' assets (other than there was

99

a home CMNC was buying), liabilities (other than there was a mortgage on the home CMNC was buying), or income and expenses.

If Attorney Kakol had made a reasonable investigation into the CMNC Debtors' financial situation and underlying facts, Attorney Kakol may have realized that filing bankruptcy was not in the best interest of some of the CMNC Debtors or maybe it was in the best interest of some of the CMNC Debtors to use the automatic stay to sell their homes to someone other than CMNC. But Attorney Kakol refused to do this because he was only paid by CMNC to stop a foreclosure and was not going to get involved in looking at the CMNC Debtors' financial situation and the real estate contracts the CMNC Debtors had with CMNC. And thus, Attorney Kakol filed front-page-only petitions with the Court with no information to determine the CMNC Debtors' actual financial situation and whether the CMNC Debtors actually qualified for or would benefit from bankruptcy relief.

There are further issues with Attorney Kakol's failure to make a reasonable investigation into the CMNC Debtors' financial situation and underlying facts. Bankruptcy cases were filed for debtors who may not have even had any creditors. Bankruptcy cases were also filed for debtors

100

who were only getting $2,500 or less from CMNC, yet their credit records are now burdened with a bankruptcy filing.

## 2. Attorney Kakol abused the bankruptcy process.

Attorney Kakol abused the bankruptcy process by filing front-page-only petitions with no intent of ever properly prosecuting the cases, not timely filing Rule 2016(b) statements, and then filing knowingly and materially false Rule 2016(b) statements. Bankruptcy courts can use their inherent authority to sanction for conduct that abuses the judicial process. *In re United States Corp. Co.*, Ch. 11 Case No. 20-40375, 2021 Bankr. LEXIS 745, 2021 WL 1100078, at *3 (Bankr. N.D. Fla. Jan. 22, 2021) (citations omitted). "This power is derived from the court's need to manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases." *Id.* (quoting *In re Evergreen Sec., Ltd.*, 570 F.3d at 1263).

Filing multiple front-page-only petitions with no intent of properly prosecuting them is an abuse of the bankruptcy process. *See In re Armwood*, 175 B.R. 779, 782-83, 787, 790 (Bankr. N.D. Ga. 1994). In *Armwood* the debtor filed bankruptcy five times, with the third, fourth, and fifth bankruptcy filings being front-page-only with no schedules or

101

plan filed with the petitions. *Id.* at 782-83.[75] All of the bankruptcies were dismissed. *Id.* at 783, 791. The petition filed in the fifth bankruptcy case only listed one creditor on the mailing matrix, which was the lienholder on the debtor's car and was done to stop the repossession of the car. *Id.* at 783, 787. The Court held that this constituted an abuse of the bankruptcy system and bad faith. *Id.* at 787. In imposing sanctions on the debtor and the debtor's attorney, the court noted that its inherent powers allowed it "to regulate its own docket to ensure the process is not being abused." *Id.* at 790 (citations omitted).

Although the facts in *Armwood* are distinguishable, the principles still apply here. Attorney Kakol abused the bankruptcy process by filing front-page-only filings merely to stop a foreclosure on the CMNC Debtors' properties so CMNC could buy time to purchase the properties—as opposed to assisting the CMNC Debtors to maximize the value of the homes.

Additionally, Attorney Kakol did not file the required statements, schedules, and Rule 2016(b) statements in the CMNC Debtor cases and never intended to. This resulted in the Court having to issue deficiency

---

[75] The same attorney represented the debtor in the third and fifth bankruptcy filings. *In re Armwood*, 175 B.R. at 783.

102

notices and expend resources to dismiss these cases for failure to cure filing deficiencies since Attorney Kakol did not voluntarily dismiss them.

Lastly, the reason Attorney Kakol's abuse of the bankruptcy system on behalf of CMNC stopped was the UST filing the Day Sanctions Motion. There is no evidence before the Court that Attorney Kakol would have stopped this abuse of the bankruptcy system without the Day Sanctions Motion and resulting *Day* suspension. Attorney Kakol even testified that *after the Day order was issued* he realized that front-page-only filings, with no intent to ever prosecute them, were not in good faith.[76]

### 3. Attorney Kakol filed knowingly false Rule 2016(b) statements.

Filing misleading Rule 2016(b) statements can constitute bad faith and subject an attorney to sanctions under a court's inherent powers. *L. Sols. Of Chi. LLC v. Corbett*, Case No. 1:18-cv-00677, 2019 U.S. Dist. LEXIS 39335, 2019 WL 1125568, at *5 (N.D. Ala. Mar. 12, 2019) *aff'd*, 971 F.3d 1299 (11th Cir. 2020). Here, it is clear that the Rule 2016(b)

---

[76] This Court is not setting forth a per se rule that a front-page-only filing can never be something other than an abusive filing. That issue is not before the Court at this time. What is an abuse of the system is what Attorney Kakol did: file a front-page-only case without obtaining the necessary information to properly advise the debtor of his or her options, after receiving a fee from a third-party purchaser which was not disclosed to the Court as required by law, for the purpose of stopping a foreclosure to allow the purchaser who paid the fee time to buy the debtor's house rather than prosecute the case for the benefit of the debtor.

statements Attorney Kakol filed were false because they listed services that Attorney Kakol never intended to perform and had not performed. Additionally, the Rule 2016(b) statements falsely certified in almost all of the CMNC Debtor cases that Attorney Kakol had provided a copy of the Rights and Responsibilities Statement to the Debtor.

Further compounding Attorney Kakol's bad faith is that he filed the majority of the Rule 2016(b) statements in the CMNC Debtor cases only after the UST filed the Day Sanctions Motion. In the two CMNC Debtor cases (Demetrias Benton and Joshua Back) that Attorney Kakol filed a Rule 2016(b) statement before the Day Sanctions Motion—but after the UST put Attorney Kakol on written notice of its investigation of his conduct in *Day*—Attorney Kakol knowingly misrepresented that it was the CMNC Debtor who paid his attorney fee for the bankruptcy when it was in fact CMNC. It was not until after the Day Sanctions Motion was filed that Attorney Kakol decided to amend the Rule 2016(b) statements in these cases to list the true source of compensation: "Kyle Edwards on behalf of CMNC Homes, LLC."

### F. Sanctions to be imposed on Attorney Kakol and his law firm

Having determined that the UST proved by clear and convincing evidence that Attorney Kakol violated certain Georgia Rules, Bankruptcy Code sections and Rule 2016, and Local Rules and General Orders of this Court in the CMNC Debtor cases, the Court turns to what sanctions should be imposed on Attorney Kakol and his law firm for these violations.

### 1. ABA Standards for Imposing Lawyer Sanctions

In deciding the sanctions to be imposed on a lawyer, the Georgia Supreme Court and the Southern District of Georgia use the ABA Standards for Imposing Lawyer Sanctions ("ABA Standards"). *In re Hawk*, Misc. No. 115-006, 2016 U.S. Dist. LEXIS 168527, 2016 WL 7157977, at *11 (S.D. Ga. Dec. 6, 2016) (noting that because the Georgia Supreme Court uses the ABA Standards for Imposing Lawyer Sanctions, the court would also utilize the ABA Standards); *Knox v. Hayes*, 933 F. Supp. 1573, 1584 (S.D. Ga. 1995) (applying the ABA Standards), *aff'd*, 108 F.3d 343 (11th Cir. 1997); *In re Aplin*, 922 S.E.2d 777, 780 (Ga. 2025) (noting that the Georgia Supreme Court "generally relies on the American Bar Association's Standards for Imposing Lawyer Sanctions

105

for guidance in determining the appropriate level of discipline, including aggravating and mitigating factors").

The ABA Standards set up a framework to analyze attorney misconduct. This Court will utilize the 1992 version of the ABA Standards because the Georgia Supreme Court has indicated that it approves of the 1992 version.[77] *In re Arrington*, 878 S.E.2d 534, 536 (Ga. 2022).

After a finding of attorney misconduct, a court considers the following factors in imposing sanctions: "(a) the duty violated; (b) the lawyer's mental state; (c) the potential or actual injury caused by the lawyer's misconduct; and (d) the existence of aggravating or mitigating factors." ABA STANDARDS art. III, § 3.0 (A.B.A. 1992); *see also In re Hood*, 909 S.E.2d 445, 449 (Ga. 2024) ("The ABA Standards recommend consideration of the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.").

---

[77] The Court has reviewed the 2012 version of the ABA Standards, and the differences between them are minor and not material to this miscellaneous proceeding.

### a. Duties Attorney Kakol violated

A lawyer owes duties to clients, the public, the legal system, and the profession. ABA STANDARDS art. II (A.B.A. 1992). As explained above, Attorney Kakol violated Georgia Rules 1.1, 1.2, 1.6, 1.7, 1.8, 3.3, and 5.4. Attorney Kakol also violated Bankruptcy Code sections, Rule 2016, and this Court's Local Rules and General Orders.

Attorney Kakol violated his duties to his clients, the CMNC Debtors. Specifically, he violated his duties to the CMNC Debtors of competence, diligence, failure to preserve the CMNC Debtors' confidences, and failure to avoid conflicts of interest. ABA STANDARDS art. III, §§ 4.2-4.5 (A.B.A. 1992).

Attorney Kakol also violated his duties to the legal system by filing false Rule 2016(b) statements and abusing the bankruptcy process. *See id.* §§ 6.1-6.2. Attorney Kakol abused the bankruptcy process by filing front-page-only petitions with no intent to properly prosecute them. Attorney Kakol also made no effort to obtain the requisite information about the CMNC Debtors' financial affairs to assist the CMNC Debtors to make informed decisions after being explained their options about how their case should proceed.

The recommended disciplinary sanctions in the ABA Standards for these violations are set forth in Appendix B.

### b. Attorney Kakol's mental state

The ABA Standards ask whether a lawyer acted intentionally, knowingly, or negligently. ABA STANDARDS art. II (A.B.A. 1992). "Intent" is defined as "the conscious objective or purpose to accomplish a particular result." ABA STANDARDS art. III, Definitions (A.B.A. 1992). "Knowledge" is defined as "the conscious awareness of the nature or attendant circumstances of the conduct but without the conscious objective or purpose to accomplish a particular result." *Id.* "Negligence" is defined as "the failure of a lawyer to heed a substantial risk that circumstances exist or that a result will follow, which failure is a deviation from the standard of care that a reasonable lawyer would exercise in the situation." *Id.*

The Court finds that Attorney Kakol's mental state was not negligent for any of his violations because he has been practicing consumer bankruptcy law for more than twenty years and has been sanctioned for some of these same violations in the past.

Instead, the Court finds that Attorney Kakol intentionally violated his duties to his clients.  First, Attorney Kakol intentionally violated the duty of confidentiality because he responded to Edwards' request for information on some of the CMNC Debtor cases and allowed Edwards to participate in the entire calls with them.  Second, Attorney Kakol intentionally violated the duty of diligence because he intentionally did not gather the requisite financial information to analyze his clients' situations and never intended to properly prosecute the bankruptcy cases for the benefit of his clients and allowed the cases to be dismissed to the potential disadvantage of and serious injury to his clients. Third, Attorney Kakol intentionally violated the duty of competence because he attempted to limit his representation of the CMNC Debtors to what amounted to basically no representation in an attempt to "avoid" a conflict of interest.

Lastly, Attorney Kakol intentionally violated his duty to avoid conflicts of interest because he was aware there was a great potential for a conflict of interest between CMNC and the CMNC Debtors. This is evidenced by the fact that Attorney Kakol stated he would not have represented the CMNC Debtors if they asked questions about their

109

contracts with CMNC. Instead of heeding this great potential for a conflict of interest, Attorney Kakol attempted to limit his "representation" of the CMNC Debtors to filing front-page-only petitions and providing no advice. As will be explained below, this caused potentially serious injury to the CMNC Debtors.

The Court also finds that Attorney Kakol intentionally abused the bankruptcy system. Attorney Kakol filed front-page-only petitions with no intent whatsoever of properly prosecuting them for the benefit of his clients and failed to provide the CMNC Debtors with adequate representation. Attorney Kakol also intentionally signed and filed false Rule 2016(b) statements for the reasons stated above.

### c. The potential or actual injury caused by Attorney Kakol's misconduct

The ABA Standards define "Injury" in pertinent part as "harm to a client, the public, the legal system, or the profession which results from a lawyer's misconduct. The level of injury can range from 'serious' injury to 'little or no' injury[.]" ABA STANDARDS art. III, Definitions (A.B.A. 1992). The ABA Standards define "Potential injury" as "the harm to a client, the public, the legal system or the profession that is reasonably foreseeable at the time of the lawyer's misconduct, and which, but for

110

some intervening factor or event, would probably have resulted from the lawyer's misconduct." *Id.*

Attorney Kakol's misconduct harmed the legal system. As explained above, Attorney Kakol abused the bankruptcy process. The court in *In re Armwood* aptly described the effect of the abuse of the bankruptcy system by front-page-only filings:

> When one or more attorneys allow one or more clients to abuse the system, the harm which devolves is not limited to the affected creditors. By example and word of mouth, the "technique" spreads until it is no longer perceived by the Bar and by debtors as an abuse but as a permissible manipulation of the system. In the meantime, respect for the bankruptcy system, including attorneys who wish to assist honest debtors, deteriorates. When public respect for any part of the legal system falters, it harms everyone involved in the system, which must rely on honest participation.

175 B.R. 779, 791 (Bankr. N.D. Ga. 1994).

Attorney Kakol's testimony complaining about being singled out for front-page-only filings and that other law firms do front-page-only filings in the Northern District of Georgia[78] illustrates the court's concern in

---

[78] There was no evidence that the cases in which other attorneys filed front-page-only filings are really similar to this case, such as filing them after taking fees from third parties who are looking to purchase the debtor's home and where the lawyer provided no meaningful analysis of the debtor's financial condition or counsel regarding alternatives. Nor have those attorneys been sanctioned repeatedly by this Court for violating Rule 2016(b) and other Bankruptcy Code sections.

111

*Armwood.* Attorney Kakol's argument was essentially that even though he has been sanctioned in the past for similar conduct, other people do it so it should be okay. That is simply wrong.

Attorney Kakol's misconduct also harmed the CMNC Debtors. One of the arguments Attorney Kakol makes is that the CMNC Debtors were not harmed by his conduct but rather their homes or the homes subject to probate were saved by him because the CMNC Debtors would have gotten nothing if their properties were sold at foreclosure instead of to CMNC.[79] The argument is basically that the CMNC Debtors were better off even though Attorney Kakol violated his ethical duties. But as Judge Mullins pointed out to Attorney Kakol at a disciplinary hearing in 2009 in *Hill*, the attorney's responsibilities under the Georgia Rules and Bankruptcy Code and Rules don't cease just because there is an emergency, such as a foreclosure. *See* Transcript of Motion to Show Cause Hearing on February 19, 2009, 10:5-11, *In re Hill*, Ch. 13 Case No. 07-67074-CRM (Bankr. N.D. Ga. Apr. 10, 2009), Dkt. No. 65.

---

[79] The argument was also made that by stopping the foreclosure Attorney Kakol also gave the CMNC Debtors the opportunity to sell the properties to whoever they wanted to, but Attorney Kakol never discussed that option with them or advised them how continued bankruptcy protection could help them maximize the value of the property through a reasonable marketing process.

112

The Court's own experience shows that this argument that the CMNC Debtors were not harmed is just wrong. Although a foreclosure auction does not bring a fair market value sale price, there are many potential buyers of these types of properties who monitor the foreclosure market and bid at these auctions. By contractually requiring the CMNC Debtors to file for bankruptcy to stop the foreclosure, CMNC gave itself more time to purchase the property and protected itself from the competitive bidding process that could have resulted at a foreclosure auction.

If it was true that the CMNC Debtors would not have gotten anything at foreclosure, one certainly has to wonder why CMNC would have agreed to pay the CMNC Debtors more than it could have purchased the property for at foreclosure. Obviously, CMNC did not want to take that chance and wanted to tie the property up before competitive bidding at a foreclosure auction occurred. This Court knows that excess bids do occur and the excess proceeds are paid into bankruptcy cases. This Court has recently had one such case where a third party bid in excess of 70%

of fair market value and the excess proceeds of more than $160,000 were paid into the bankruptcy case.[80]

Attorney Kakol's argument that he helped the CMNC Debtor's get something instead of nothing is based on the pictures of some of the properties in Edwards' deposition. But Edwards only provided pictures of twelve of nineteen CMNC Debtors' properties.[81] Despite being cluttered, it is clear that some of the properties did not require much work, as evidenced by CMNC costs set forth in Table B of this Order.

For example, CMNC only had costs of $4,410 on Jerome Davis' property—including the bankruptcy and probate costs—so the property was in decent shape and readily saleable. And CMNC had a net return on investment of 79% and a net profit of more than $71,000 on that property. Clearly, those facts show that Attorney Kakol's failure to advise Jerome Davis of his options and the alternatives to the sale of the property to CMNC involved at least the potential for serious harm to Jerome Davis.

---

[80] *See In re Parham*, Ch. 13 Case No. 26-51165-JRS (Bankr. N.D. Ga.).
[81] These CMNC Debtors are Lottie Harmon, Joshua Back, David Jennings, Teresa Blythe, Gary Hartsell, Amanda Gutierrez, Shanterri Slaton, Richard Antrican, Jerome Davis, Christy Fowler, Kareem Kenyada, and Glynetta Anderson. *See* (Edwards Dep. Exs. D002-D013).

114

Another example is Amanda Gutierrez. The mortgage on the property that was the subject of her case was only about $12,000 and only about $15,000 was spent by CMNC on that property—including bankruptcy and probate costs. Because CMNC had a net return on investment of 36% after sale of that property, it is apparent that the failure of Attorney Kakol to advise her of her options—which could also have potentially included assumption or modification of the mortgage or the sale of the property after a reasonable marketing period—involved at least the potential for serious harm to her.

The potential serious harm to every CMNC Debtor is illustrated in Table B of this Order. The fact is that CMNC had a return on its investment—after rehab costs—of 129%, 79%, 70%, 48% and 47% on the properties it purchased from Joshua Back, Jerome Davis, Richard Antrican, David Jennings and Lottie Harmon, respectively, yet it only paid these debtors $15,000, $10,000, $6,000, $5,000 and $2,500 respectively. This is clear and convincing evidence of the potential for serious harm to them. Most of the CMNC Debtors had the potential to get more for the property at issue either through a foreclosure auction or

a reasonable marketing period that bankruptcy should have provided to them.

In addition, there was the potential for serious harm to Kareem Kenyada and Lottie Harmon, who filed bankruptcy and injured their credit records to receive a mere $2,000 and $2,500, respectively, without having the benefit of competent advice from an attorney whether that was a good idea.  This is not a new issue from a Court to Attorney Kakol: Judge Mullins also lectured him on the harm to a debtor's credit record by filing bankruptcy without understanding the consequences of such a filing in *Hill*.  Transcript of Motion to Show Cause Hearing on February 19, 2009, 13:8-17, *In re Hill*, Ch. 13 Case No. 07-67074-CRM (Bankr. N.D. Ga. Apr. 10, 2009), Dkt. No. 65.

Furthermore, we can see from text messages between Edwards and Callie Moore and Edwards and Teresa Blythe that there was the potential for serious harm to them because they indicated they wanted to sell the properties for more than CMNC was offering, yet they received no counseling from Attorney Kakol that would have let them know they did have options that potentially could have improved the sale price they received from the properties.

Ultimately, after considering the duties Attorney Kakol violated, Attorney Kakol's mental state, and the potential or actual serious injury caused by Attorney Kakol's misconduct, and applying the Court's findings to the ABA Standards, the Court concludes the appropriate sanction for the misconduct of Attorney Kakol is permanent disbarment from the practice of law in this Court and to permanently prohibit his law firm from filing cases and representing parties in cases in this Court, subject to adjustment for aggravating or mitigating factors which will be discussed below.[82]

### d. The existence of aggravating or mitigating factors

### a. Aggravating factors

The ABA Standards define "[a]ggravation or aggravating circumstances" as "any considerations or factors that may justify and increase in the degree of discipline to be imposed." ABA STANDARDS art. III, § 9.21 (A.B.A. 1992). Aggravating factors include:

> (a) prior disciplinary offenses; (b) dishonest or selfish motive; (c) a pattern of misconduct; (d) multiple offenses; (e) bad faith obstruction of the

---

[82] Although the Court finds that the suggested sanction of disbarment is the appropriate sanction based on the ABA standards for each of Attorney Kakol's violations because of its finding that his conduct had the requisite mental state and resulted in a potential for serious injury to warrant that sanction, if it had been determined that the conduct only had the requisite mental state and resulted in merely the potential for injury, so as to merit the sanction of suspension, the sheer number of violations warranting a suspension would be an aggravating factor to merit disbarment.

117

disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency; (f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process; (g) refusal to acknowledge wrongful nature of conduct; (h) vulnerability of victim; (i) substantial experience in the practice of law; (j) indifference to making restitution; (k) illegal conduct, including that involving the use of controlled substances.

*Id.* § 9.22.

Aggravating factors which are not present here are dishonest or selfish motive,[83] bad faith obstruction of the disciplinary proceeding by failing to comply with orders of the Court, submission of false evidence or false statements during the disciplinary proceeding, indifference to making restitution, and illegal conduct.

The aggravating factors that are present here are particularly aggravating. First, Attorney Kakol has an extensive disciplinary history, which is set forth in Appendix A, including for some of the same violations at issue here.

---

[83] Although Attorney Kakol earned a fee for the very little work he and his office performed, the Court views selfish motive as requiring something more than the standard fee, such as if Attorney Kakol was getting an additional payment from CMNC based on a percentage of the deal. There is no evidence of any such arrangement.

118

Second, Attorney Kakol's misconduct at issue in this miscellaneous proceeding is a pattern of misconduct and there are multiple offenses in many of the CMNC Debtor cases in this miscellaneous proceeding. Attorney Kakol's misconduct that is the subject of this miscellaneous proceeding is also very similar to his misconduct in the *Day* case. Additionally, there are many CMNC Debtor cases in this miscellaneous proceeding where Attorney Kakol engaged in the same misconduct. Thus, Attorney Kakol's pattern of misconduct and there being multiple offenses are aggravating factors.

Third, Attorney Kakol refuses to acknowledge that there was a conflict of interest in the *Day* case and the CMNC Debtor cases. Instead, Attorney Kakol essentially told the Court that it was wrong in its *Day* opinion about there being a conflict of interest and complained about being singled out for filing front-page-only filings. Thus, Attorney Kakol's refusal to acknowledge the wrongful nature of his conduct is an aggravating factor, even if he said he would not do it anymore.

Fourth, the CMNC Debtors were vulnerable as many of them were dealing with the recent loss of a loved one and the stress of a foreclosure. Thus, the vulnerability of the CMNC Debtors is an aggravating factor.

119

Lastly, Attorney Kakol has been practicing consumer bankruptcy law for decades and has handled thousands of consumer bankruptcy cases. Thus, Attorney Kakol's substantial experience in practicing consumer bankruptcy law is an aggravating factor.

Ultimately, the aggravating factors that are applicable here reinforce the conclusion that the appropriate sanction for Attorney Kakol is permanent disbarment from the practice of law in this Court and to permanently prohibit his law firm from filing cases and representing parties in cases in this Court.

### b. Mitigating factors

The ABA Standards define "[m]itigation or mitigating circumstances" as "any considerations or factors that may justify a reduction in the degree of discipline to be imposed." ABA STANDARDS art. III, § 9.31 (A.B.A. 1992). Mitigating factors include:

> (a) absence of a prior disciplinary record; (b) absence of a dishonest or selfish motive; (c) personal or emotional problems; (d) timely good faith effort to make restitution or to rectify consequences of conduct; (e) full and free disclosure to disciplinary board or cooperative attitude toward proceedings; (f) inexperience in the practice of law; (g) character or reputation; (h) physical disability; (i) mental disability or chemical dependency including alcoholism or drug

120

abuse when: (1) there is medical evidence that the respondent is affected by a chemical dependency or mental disability; (2) the chemical dependency or mental disability caused the misconduct; (3) the respondent's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and (4) the recovery arrested the misconduct and recurrence of that misconduct is unlikely; (j) delay in disciplinary proceedings; (k) imposition of other penalties or sanctions; (l) remorse; (m) remoteness of prior offenses.

*Id.* § 9.32.

Mitigating factors which Attorney Kakol asserts are present here are absence of a dishonest or selfish motive,[84] good faith effort to rectify consequences of misconduct (Attorney Kakol made changes after the *Day* suspension), and imposition of other penalties or sanctions (*Day* suspension).

Mitigating factors for which no evidence was presented are personal or emotional problems, character or reputation, physical disability, and delay in disciplinary proceedings.

The mitigating factors which are not present here are absence of a prior disciplinary record, full and free and disclosure to disciplinary

---

[84] See the comment on selfish motive in footnote 83.

121

board or cooperative attitude toward proceedings, inexperience in the practice of law, remorse, and remoteness of prior offenses. Concerning the factor of full and free disclosure and cooperative attitude toward proceedings, the Court notes that Attorney Kakol failed to turn over some case files for the CMNC Debtors to the UST and had to be ordered by this Court to do so.

The Court does not view the sanctions against Attorney Kakol and his law firm in *Day* to be a mitigating factor here because those were sanctions for the misconduct in that case and this is a distinct proceeding involving different cases, although the conduct is similar. In the *Day* Order, the Court specifically stated it would reserve ruling on the misconduct in these cases pending the outcome of this miscellaneous proceeding. *Townson v. Kakol (In re Day)*, Ch. 13 Case No. 23-52197, 2024 Bankr. LEXIS 851, 2024 WL 1506751, at *36 (Bankr. N.D. Ga. Apr. 5, 2024).

In addition, Attorney Kakol testified about changes he had made to his law practice to prevent this type of misconduct from happening again, but the Court has heard that before from Attorney Kakol. In his long history of disciplinary proceedings before this Court, the Court has been

122

told by Attorney Kakol that procedures have been instituted to clean up "sloppy" practice. But the Court sees this as more than sloppy practice, and misconduct just continues to happen again and again.

Ultimately, the mitigating factors here do not support reducing the sanction of permanent disbarment for Attorney Kakol from the practice of law in this Court and permanently prohibiting his law firm from filing cases and representing parties in cases in this Court.

### c. Factors that are not mitigating or aggravating

The ABA Standards also identify factors which "should not be considered as either aggravating or mitigating": "(a) forced or compelled restitution; (b) agreeing to the client's demand for certain improper behavior or result; (c) withdrawal of complaint against the lawyer; (d) resignation prior to completion of disciplinary proceedings; (e) complainant's recommendation as to sanction; (f) failure of injured client to complain." ABA STANDARDS art. III, § 9.4 (A.B.A. 1992).

The first four of those factors are not present here, but the last two are, and are discussed below.

The Court notes that the UST did recommend a lesser sanction to the Court. But the Court finds that recommendation does not adequately

123

align with Attorney Kakol's intentional misconduct and the potential for serious injury here arising from the numerous serious violations of the Georgia Rules, Bankruptcy Code sections and Rules and the General Order, including the filing of numerous knowingly material false statements in the Court, and the very long history of discipline arising from repeated violations involving much of the misconduct here.[85] The ABA Standards make clear that the UST's recommendation should not factor into the sanction the Court imposes on Attorney Kakol.

The ABA Standards also make clear the failure of the CMNC Debtors to complain should not factor into the sanction the Court imposes on Attorney Kakol.[86] This is particularly appropriate in this proceeding since some of the serious violations of misconduct on the part of Attorney Kakol involve his violations of duties to the legal system, and not just his clients, including but not limited to filing knowingly false Rule 2016(b) statements, and abuse of the legal process.

---

[85] The Court also notes that during a status conference the parties advised the Court they may have a proposed agreed upon sanction. The Court informed the parties that regardless of whether the parties had a proposed agreement, the Court would have to perform its own analysis as to Attorney Kakol's violations and determine the appropriate sanction. Not only did neither party object, but they expressly understood that to be the case.

[86] The UST advised the Court that it had a difficult time contacting and communicating with the CMNC Debtors and the Court notes that the docket in this miscellaneous proceeding reflects many notices of undeliverable mail addressed to the CMNC Debtors, which makes sense because the houses in which they may have lived were sold.

124

## III.   Conclusion

This miscellaneous proceeding is important because

> lawyers serve a critical function in our society. Lawyers are entrusted with the duty of serving their clients' best interests, within the confines of the law and in accordance with the rule of law. To serve such noble ends, lawyers are deemed officers of the Court and are charged with the "special responsibility for upholding the quality of justice within the judicial process."   Both courts and clients must be able to rely upon the competence, diligence, and dedication of the attorneys who comprise the bar of the state in which they are admitted to practice. When an attorney falls short of meeting these standards, the Court must act to protect the integrity of the judicial system.

*Cheney v. Watson (In re Recovery L. Grp., APC)*, 670 B.R. 193, 237 (Bankr. E.D. Va. 2025) (internal citations omitted).[87]   Additionally, this "Court takes very seriously its 'duty to protect an unsuspecting public from attorneys who fail to perform competently and professionally . . . .'" *In re Dobbs*, 535 B.R. 675, 692 (Bankr. N.D. Miss. 2015) (quoting *In re T.H.*, 529 B.R. 112, 133 (Bankr. E.D. Va. 2015)).

---

[87] In *Hill*, Judge Mullins stated on the record that judges "have to trust the system and trust the lawyers involved, but when something is brought to our attention that highlights that, we simply can't turn our back and act as if nothing happened, no harm, no foul. That would just be a total breakdown of the bankruptcy process." Transcript of Motion to Show Cause Hearing on February 19, 2009, 12:21-13:1, *In re Hill*, Ch. 13 Case No. 07-67074-CRM (Bankr. N.D. Ga. Apr. 10, 2009), Dkt. No. 65.

125

Simply put, after having been disciplined by this Court in at least twenty-five cases over his years practicing in this Court, not including the many cases in this miscellaneous proceeding, this Court has no confidence that Attorney Kakol will truthfully make the required disclosures to the Court and adequately represent debtors who appear in this Court.

Accordingly, based upon the Court's inherent authority, 11 U.S.C. § 105, and 11 U.S.C. § 526(c)(5)(B) it is hereby

**ORDERED** that effective upon the entry of this Order, Attorney Kakol is permanently disbarred from the practice of law in the Bankruptcy Court for the Northern District of Georgia, and his law firm, the Law Offices of Stanley J. Kakol, Jr., LLC, is permanently prohibited from filing cases and representing parties in the Bankruptcy Court for the Northern District of Georgia; [88]

**IT IS FURTHER ORDERED** that the Clerk of this Court is directed to immediately terminate the CM/ECF privileges of Attorney Kakol and his law firm and terminate him and his law firm as counsel of record in any open cases and adversary proceedings in this Court;

---

[88] Attorney Kakol may appear in this Court on behalf of his law firm for the limited purpose of any proceedings to determine his firm's entitlement to fees in his open cases.

126

**IT IS FURTHER ORDERED** that Attorney Kakol shall give written notice to each of his clients with cases pending in this Court of his inability to act as an attorney in this Court in sufficient time for the client to obtain new counsel or for the client to seek an extension of any deadlines or hearings, but in no event later than within thirty days from the date of entry of this Order. The notice shall advise his clients to either promptly substitute another attorney in his place or proceed pro se. Attorney Kakol is reminded of his duties under the Georgia Bar Rule 4-219(b)(1), as applicable to this Court, of "taking all actions necessary to protect the interests of his clients"; and

**IT IS FURTHER ORDERED** that the Clerk shall file on the docket in each open case and adversary proceeding in which Attorney Kakol and his law firm are counsel of record in this Court a notice of their inability to practice law and represent parties in this Court and serve a copy of that notice on the debtor by mail.

The Clerk is directed to serve a copy of this Order on the UST, counsel for Attorney Kakol, and Attorney Kakol.

### END OF ORDER

127

This Order has been adopted as an Order of
the entire Court for this District at a regular
meeting of all the active bankruptcy judges
in this District by unanimous vote of all
bankruptcy judges who voted.

For the Court:

_____

Barbara Ellis-Monro
Chief Judge
United States Bankruptcy Court
for the Northern District of Georgia

# APPENDIX A

## A. The State Bar of Georgia's discipline of Attorney Kakol

The State Bar of Georgia has disciplined Attorney Kakol in the past multiple times, including by suspending him from practice for three years.  In May of 1997, Attorney Kakol was suspended from practice until further order of the Georgia Supreme Court for failure to adequately respond to the State Bar of Georgia's Notice of Investigation, in which the maximum sanction for the violations therein was disbarment. *See* Order, *In re Kakol*, Case No. S97Y1236 (Ga. May 13, 1997). Attorney Kakol thereafter adequately responded and was reinstated in July 1997. *See* Order, *In re Kakol*, Case No. S97Y1236 (Ga. July 2, 1997).

Shortly thereafter, in January 1998, the Georgia Supreme Court accepted Attorney Kakol's petition for voluntary discipline and suspended him for three years in resolution of nine disciplinary matters pending against him in two separate notices of discipline.  *See In re Kakol*, 494 S.E.2d 340, 341 (Ga. 1998).  Attorney Kakol admitted to violating

> Standards 22 (failure to properly withdraw from employment on discharge by client); 44 (willful abandonment or disregard of a client's legal matter); 61 (failure to promptly notify a client of

129

the receipt of client funds or property and to promptly deliver the funds or property to the client); 63 (failure to maintain complete records of client); and 65 (commingling of client funds with those of the lawyer) of Bar Rule 4-102 (d) . . . .

*Id.*

The Georgia Supreme Court also noted that

In some or all of the nine pending disciplinary matters, Kakol agreed to represent clients and then did not take appropriate action in their cases, including failing to file lawsuits or settle cases, failing to appear in court or notify the client of court dates thus permitting the statute of limitation to expire and cases to be dismissed; failing to return client files upon request; failing to promptly deliver settlement proceeds to a client; presenting checks from his escrow account against insufficient funds; and using his escrow account as his personal checking account.

*Id.*

Next, in 2010, Attorney Kakol was disciplined by the Georgia Supreme Court for failing to have an escrow account, which discipline consisted of a Review Panel reprimand in accordance with Bar Rules 4-102 (b) (4) and 4-220, and with various conditions strictly limiting Attorney Kakol's practice for two years.[89]  *See In re Kakol*, 689 S.E.2d

---

[89] Attorney Kakol had closed his practice at this time and became an associate at another law firm where he had no managerial responsibility.  He was required to remain an associate at this law firm

130

308, 309-10 (Ga. 2010).  The Georgia Supreme Court noted that Attorney

Kakol's prior discipline included a "1984 public reprimand, a three-year

suspension in 1998, and a letter of admonition in 2007."  *Id.* at 309.

Attorney Kakol's discipline by the Georgia Supreme Court in 2010 was

the result of this Court's decision in *Townson v. Kakol (In re Willis)*, Ch.

13 Case No. 06-61285-JB, 2007 Bankr. LEXIS 3413, 2007 WL 7140150

(Bankr. N.D. Ga. Aug. 29, 2007), in which Judge Bihary's sanctions

included limiting Attorney Kakol to filing no more than two cases per

month for eighteen months.

## B. The Bankruptcy Court for the Northern District of Georgia's discipline of Attorney Kakol

The Bankruptcy Court for the Northern District of Georgia has

frequently sanctioned Attorney Kakol.  A ***sample*** of such cases follows

with particularly applicable portions bolded[90]:

### Sanctions between 2005 and 2015

*In re Derrick Lamar Williams*, Ch. 13 Case No. 04-98641-MHM; *In re Jake Shields*, Ch. 13 Case No. 04-98620-MHM; and *In re Belinda Maria Hearn*, Ch. 13 Case No. 04-98293-MHM

---

for twenty-four months, but was precluded from signing and filing pleadings, and appearing at hearings, among many other restrictions.

[90] Other orders exist which disallow or reduce Attorney Kakol's fees for various violations of duties and failures to properly represent his clients.

131

- Facts: **Attorney Kakol Failed to properly represent each of the three clients in these cases.**
- Disposition: The Court dismissed all three cases, and Attorney Kakol was required to disgorge all fees and to prepare and file new cases for each of the debtors and to pay the filing fees for each.[91]

### *In re Sandra Jewel Hunter*, Ch. 13 Case No. 05-84124-JEM

- Facts: **Attorney Kakol and another attorney filled out a petition and took no further action for a fee of $1,500.**
- Disposition: Attorney Kakol was required to return all fees received, and the Court imposed a $250 sanction on Attorney Kakol payable to the Court.[92]

### *In re Kimberley Anntionette Smith*, Ch. 13 Case No. 06-62445-JEM

- Facts: **Attorney Kakol failed to file complete schedules, statements of financial affairs, and required disclosure statements. The Court identified twenty other cases filed by Attorney Kakol since September 2005, in which he also failed to file complete schedules, statements of financial affairs, and required disclosure statements.** The Court also identified another thirty-five cases where Attorney Kakol filed schedules and statements of financial affairs for his clients some fifty-three days on average beyond the deadline of fifteen days after the petition date. Attorney Kakol acknowledged that he should be sanctioned, but he stated he believed he could safely handle one new case per month.
- Disposition: Attorney Kakol was prohibited from filing cases for six months from June to December 2006.[93]

---

[91] *See* Order for Attorney to Show Cause, *In re Williams*, Ch. 13 Case No. 04-98641-MHM (Bankr. N.D. Ga. Apr. 25, 2005), Dkt. No. 21; Order Dismissing Case, *In re Williams*, Ch. 13 Case No. 04-98641-MHM (Bankr. N.D. Ga. May 19, 2005), Dkt. No. 25; Order Dismissing Case, *In re Shields*, Ch. 13 Case No. 04-98620-MHM (Bankr. N.D. Ga. May 19, 2005), Dkt. No. 18; Order Dismissing Case, *In re Hearn*, Ch. 13 Case No. 04-98293-MHM (Bankr. N.D. Ga. May 18, 2005).

[92] *See* Order Directing Stanley J. Kakol, Jr. and Sandra Sheppard to Refund Fees, *In re Hunter*, Ch. 13 Case No. 05-84124-JEM (Bankr. N.D. Ga. Mar. 10, 2006), Dkt. No. 24.

[93] *See* Order Barring Stanley J. Kakol, Jr. From Filing Any Case in This Court Prior to December 1, 2006, *In re Smith*, Ch. 13 Case No. 06-62445-JEM (Bankr. N.D. Ga. June 2, 2006), Dkt. No. 15.

132

_In re Patricia H. Willis_, Ch. 13 Case No. 06-61285-JB[94]

- Facts: **Attorney Kakol failed to file the Rule 2016(b) statement. The Court issued an Order of Sanctions in response to the Chapter 13 Trustee's Motion for Sanctions for Attorney Kakol's repeated failure to file the Rule 2016(b) statements.** The Court also expressed concern about Attorney Kakol's lack of an escrow account, his "all cash" law practice, and his repeated failure to disclose fees.

- Disposition: Attorney Kakol was required to complete (1) six hours of continuing legal education on consumer bankruptcy law, (2) six hours of continuing legal education on ethics, (3) a consultation with the State Bar of Georgia on Law Firm Management, and (4) to refrain from filing more than two cases per month for eighteen months.

_In re Deborah Williams_, Ch. 7 Case No. 07-68540-MHM[95]

- Facts: **Attorney Kakol failed to file a Rule 2016(b) statement, failed to file the required documents before the 341 meeting, and failed to seek additional time to do so.** Attorney Kakol also failed to ensure that his client appeared at the 341 meeting.[96] Lastly, Attorney Kakol also filed motions to extend the stay without performing his duties.

- Disposition: Sanctions deferred but never imposed. The Chapter 13 Trustee was directed to monitor cases Attorney Kakol was involved in. The Order in this case, entered in September 2007, mentions that in August 2007, as a result of the _Willis_ case discussed above, Attorney Kakol advised the Court he had voluntarily agreed to limit

---

[94] The opinion in this case was published: _In re Willis_, Ch. 13 Case No. 06-61285-JB, 2007 Bankr. LEXIS 3413, 2007 WL 7140150 (Bankr. N.D. Ga. Aug. 29, 2007).

[95] The opinion in this case was published: _In re Williams_, Ch. 7 Case No. 07-68540-MHM, 2007 Bankr. LEXIS 3723, 2007 WL 7141823 (Bankr. N.D. Ga. Sept. 7, 2007).

[96] The Motion for Show Cause Order identified three other cases with similar issues involving five total debtors. None of the five debtors appeared at their 341 meetings. _See_ Motion for Order to Show Cause, _In re Williams_, Ch. 7 Case No. 07-68540-MHM (Bankr. N.D. Ga. July 16, 2007), Dkt. No. 25.

his practice to filing no more than two cases per month so he can try to improve the deficiencies in his practice.

### *In re Larry Vonzell Black & Ruby Mae Black*, Ch. 13 Case No. 07-74822-CRM

- Facts: Attorney Kakol filed a Motion to Reconsider on behalf of the debtor despite not having been the attorney of record in the case previously. **Attorney Kakol did not file the required disclosure statement pursuant to Rule 2016(b) even though he admitted to accepting $1,000 from the debtor prior to his appearance.**
- Disposition: Unknown or none; no written order entered, although the matter was pending after the sanctions in *Willis* had limited Attorney Kakol's practice. Motion to Reconsider was denied and case was closed.[97]

### *In re Bobby Lee Robinson*, Ch. 13 Case No. 07-68960-MHM[98]

- Facts: Attorney Kakol Failed to appear at a hearing on an objection to claim that he had filed.
- Disposition: Attorney Kakol was ordered to remit $200 to the trustee. Attorney Kakol was operating under the limitation on filing new cases set forth in the *Willis* case discussed below at this time.

### *In re Patricia A. Coard-Seabrooks*, Ch. 13 Case No. 07-70014-JEM

- Facts: Attorney Kakol received $4,500 for a bankruptcy case with only one creditor paid through the Chapter 13 plan, which the Court found to be a high fee. The Chapter 13 Trustee also reported not receiving payments from the debtor timely on the required

---

[97] *See* Order Denying Motion to Reconsider Dismissal and Notice to Stanley Kakol to Show Cause at a Hearing to be Held on January 30, 2008 Why He Should not be Barred From Filing Any Case in this Court for a Period of Six Months, *In re Black*, Ch. 13 Case No. 07-74822-CRM (Bankr. N.D. Ga. Jan. 4. 2008), Dkt. No. 38.

[98] The opinion in this case was published: *In re Robinson*, Ch. 13 Case No. 07-68960-MHM, 2008 Bankr. LEXIS 4404, 2008 WL 7842094 (Bankr. N.D. Ga. Apr. 3, 2008).

134

schedule, but instead in lump sums. Judge Massey wanted to know what Attorney Kakol was doing to earn his fee in a one creditor case under the circumstances.

- Disposition: Unknown or none; hearing held to evaluate Attorney Kakol's fee, but no written order entered.[99]  The law firm of Clark and Washington was substituted in as counsel.

## *In re Leroy Hill*, Ch. 13 Case No. 07-67074-CRM

- Facts: Attorney Kakol prepared and filed a Chapter 13 petition for the debtor, Leroy Hill, signed by his son, Tyrone Hill, without proof of the son's legal right to sign on behalf of his father. **Attorney Kakol also failed to timely file an accurate Rule 2016(b) Disclosure Statement; failed to timely file the debtor's Schedules I and J; and knowingly made false oaths in relation to the case.** Attorney Kakol also prepared a bankruptcy case under Chapter 13 that was filed in Maryland for the same debtor at the same time as this case.
- Disposition: Attorney Kakol was required to pay back the filing fee for the Maryland case. **Attorney Kakol advised the Court in February 2009 that he had closed his law practice and that he had transferred all cases to another firm and was working as an intake attorney for Sandberg & Associates but would not represent debtors in this Court. His lawyer proffered that Attorney Kakol has "determined that running a business of his own is beyond his capabilities and is very aware of the problems he has encountered over the years and decided it is best to go work for someone else."** No additional sanctions were imposed, but **the Court put its findings on the record for future use if Attorney Kakol represented debtors in this Court again.**[100]

---

[99] *See* Order to Show Cause and Notice of Continued Hearing on Trustee's Motion to Dismiss, *In re Coard-Seabrooks*, Ch. 13 Case No. 07-70014-JEM (Bankr. N.D. Ga. Nov. 3, 2008), Dkt. No. 58.

[100] *See* Order, *In re Hill*, Ch. 13 Case No. 07-67074-CRM (Bankr. N.D. Ga. Feb. 27, 2009), Dkt. No. 63; Transcript of Motion to Show Cause Hearing on February 19, 2009, *In re Hill*, Ch. 13 Case No. 07-67074-CRM (Bankr. N.D. Ga. Apr. 10, 2009), Dkt. No. 65.

*In re Kadesha Grey*, Ch. 13 Case No. 15-52337-MHM

- Facts: Attorney Kakol was now working as an associate at Golden & Associates. After a failure to pay the full filing fee, Attorney Kakol filed a motion to vacate dismissal (even though vacating the dismissal would not impose the stay) and then failed to prosecute the motion.
- Disposition: Attorney Kakol was required to obtain, within six months, two hours of continuing legal education on ethics and professionalism in connection with Chapter 13.[101]

Attorney Kakol ceased the practice of law between 2015 and 2019.

By 2018, Judges Massey, Bihary, Murphy, and Mullins had all retired.

### Sanctions between 2020 to present

*In re Neil Arthur Duelen & Tracy Lynn Duelen*, Ch. 13 Case No. 19-69887-PMB

- Facts: **Attorney Kakol failed to go over the Rights and Responsibilities Statement with debtors,** failed to meet with and obtain original signatures on the verifications, **and did not timely execute a contract with the debtors.**
- Disposition: Attorney Kakol's fees were disallowed in their entirety, and in all active cases pending in the Northern District of Georgia as of March 5, 2020, where he was listed as counsel of record, Attorney Kakol was required by April 30, 2020, to review with his clients all Verified Papers filed in each case, obtain the client's signature on the papers, and certify to the Court that the documents had been signed and were accurate or, if errors and omissions were discovered, prepare and file corrected Verified Papers, signed by the debtors.  For a period of twelve months Attorney Kakol was also required to attach a photocopy of the

---

[101] *See* Order, *In re Grey*, Ch. 13 Case No. 15-52337-MHM (Bankr. N.D. Ga. Apr. 30, 2015), Dkt. No. 37.

136

debtor's wet ink signature on a Verified Paper when the debtor elected to affix their original signature to the Verified Paper using a wet ink signature.  During this same twelve-month period, if the debtor elected to affix their original signature to a Verified Paper using an e-signing and digital management software application, Attorney Kakol was required to attach to each filing that included a Verified Paper an audit trail from the software application. Lastly, for a period of three months, Attorney Kakol was limited to filing no more than fifteen Chapter 13 cases per month.[102]

### *In re Sedric Delaney Ross,* Ch. 7 Case No. 20-60176-LRC

- Facts: Attorney Kakol secured a limited imposition of the stay to a date certain when a hearing would be held. However, Attorney Kakol submitted a proposed order granting the imposition of the stay, without restriction or notice of a hearing and signed opposing counsel's signature to the proposed order without permission.
- Disposition: Attorney Kakol's fee was reduced to $4,000 and for a period of twelve months Attorney Kakol was required to attach to any proposed order written permission from opposing counsel along with the signature.[103]

### *In re Tommy LeWayne Leach,* Ch. 13 Case No. 22-51217-SMS

- Facts: Attorney Kakol filed a motion to impose the stay, which was granted, but then waited three weeks to upload the order, so the debtor's car was repossessed. Attorney Kakol also failed to familiarize himself with the facts of the repossession prior to a hearing for turnover and it was unclear when the car was repossessed. The Court granted turnover of the vehicle, but Attorney Kakol again failed to timely upload an order.

---

[102] *See* Order on United States Trustee's Motion for Review of Conduct and Fees and Motion for Sanctions, *In re Duelen*, Ch. 13 Case No. 19-69887-PMB (Bankr. N.D. Ga. Mar. 25, 2020), Dkt. No. 34; Consent Order Amending Court's Order on United States Trustee's Motion for Review of Conduct and Fees and Motion for Sanctions, *In re Duelen*, Ch. 13 Case No. 19-69887-PMB (Bankr. N.D. Ga. Aug. 5, 2020), Dkt. No. 39.

[103] *See* Order Regarding Show Cause Hearing, *In re Ross*, Ch. 7 Case No. 20-60176-LRC (Bankr. N.D. Ga. May 4, 2020), Dkt. No. 34.

- Disposition: Attorney Kakol's fees were disallowed.[104]

## *In re Keyanna Kesha Nelson*, Ch. 13 Case No. 23-50126-LRC

- Facts: Attorney Kakol failed to appear for a hearing on the debtor's Motion to Impose Stay, which Attorney Kakol's law firm scheduled.
- Disposition: Attorney Kakol's fee was reduced by $500.[105]

## *In re Temeka Narisse White*, Ch. 7 Case No. 22-58566-PMB

- Facts: Attorney Kakol failed to disclose a personal injury action when he filed the case, failed to seek employment of special counsel, and also allowed settlement proceeds to be paid to special counsel without approval of the Court.
- Disposition: Attorney fees were reduced by $1,000, and Attorney Kakol was ordered to implement procedures by which his law firm would thoroughly counsel debtors regarding their continuing duty to: disclose all claims and causes of action; timely identify and schedule all claims and causes of action; promptly seek approval for employment of professionals, with a properly detailed application and verified statement of the professional; serve retention applications and orders on employed professionals; properly counsel debtors, and instruct professionals regarding restrictions and requirements for settlements and disbursement of proceeds; periodically communicate with debtors and professionals to monitor their conduct; obtain necessary documents and information; prepare, file, and serve pleadings that adequately set forth material terms for approval of settlements, compensation of professionals, and disbursement of proceeds; serve professionals with pertinent orders; and timely and fully communicate and cooperate with the trustee serving in the case.[106]

---

[104] *See* Order Disallowing Attorney's Fees, In re *Leach*, Ch. 13 Case No. 22-51217-SMS (Bankr. N.D. Ga. June 8, 2022), Dkt. No. 32.

[105] *See* Order Regarding Show Cause Hearing, *In re Nelson*, Ch. 13 Case No. 23-50126-LRC (Bankr. N.D. Ga. Feb. 15, 2023), Dkt. No. 20

[106] *See* Supplemental Order Regarding Attorney Fees for and Practices by the Law Office of Stanley J. Kakol, Jr., and Order for Attorney Rebecca Kay Sapp to Show Cause, *In re White*, Ch. 7 Case No. 22-58566-PMB (Bankr. N.D. Ga. Aug. 31, 2023), Dkt. No. 42.

_In re Emeka Nwosu_, Ch. 13 Case No. 23-55213-JWC

- Facts: **Attorney Kakol and his law firm failed to properly confirm the debtor's identification and failed to conduct a proper inquiry into the debtor's financial affairs prior to filing the bankruptcy case.**

- Disposition: The attorney fees were reduced to $357.50, and Attorney Kakol and his law firm were required to develop and implement procedures to ensure his law firm properly verifies the identity of his law firm's clients prior to the filing of a bankruptcy case, including: processes by which his law firm will collect photo identification and proof of social security number from each client prior to filing a bankruptcy case; ensure that an attorney with his law firm reviews the identification documentation received from the client prior to filing a bankruptcy case for accuracy and authenticity; and compares the identification document to the information included on the voluntary petition. **Attorney Kakol and his law firm were also ordered to implement procedures to ensure that his law firm abides by the Rights and Responsibilities Statement.**[107]

_In re Chrisea Denise Moring_, Ch. 13 Case No. 23-56182-BEM

- Facts: **Attorney Kakol did not provide the debtor with a copy of the Rights and Responsibilities Statement as required by the General Order.** At the 341 meeting of creditors, the debtor testified that she had not met with an attorney since the case was filed and only met with support staff to answer questions she had regarding her case, potentially including legal questions, despite the fact that the Chapter 13 Trustee had specifically asked Attorney Kakol to meet with debtor to discuss her rights and responsibilities. The meeting of creditors also revealed undisclosed debts and undisclosed assets of the debtor.

---

[107] _See_ Supplemental Consent Order Regarding Attorney Fees for and Practices by the Law Office of Stanley J. Kakol, Jr., _In re Nwosu_, Ch. 13 Case No. 23-55213-JWC (Bankr. N.D. Ga. Oct. 20, 2023), Dkt. No. 27.

- Disposition: Case dismissed, and any unpaid attorney fees were disallowed.[108]

## *In re Frederick Phillips*, Ch. 7 Case No. 22-50660-BEM

- Facts: Attorney Kakol converted a case from Chapter 13 to Chapter 7 despite the debtor being ineligible for a Chapter 7 discharge.
- Disposition: Attorney Kakol filed a motion for voluntarily dismissal of the debtor's case, and the debtor's case was dismissed.[109]

## *In re David George DaCosta*, Ch. 13 Case No. 22-59912-SMS[110]

- Facts: Attorney Kakol failed to timely move to extend the automatic stay as required by the Bankruptcy Code since it was the debtor's second Chapter 13 case in one year, filed a Chapter 13 plan with the incorrect case number, and failed to object to creditor claims. Further, **the debtor sought sanctions against Attorney Kakol related to Attorney Kakol's failure to communicate with the debtor, his failure to properly represent the debtor,** and his $5,200 fee in the case.  At the show cause hearing on the debtor's request for sanctions, **the Court discovered that Attorney Kakol also required the debtor to submit a $1,000 payment to show "good faith" to the Court that the debtor had the funds to complete a Chapter 13 case**, but Attorney Kakol kept this money for himself. According to the Court, Attorney Kakol also "disparaged the debtor's mental health" despite warnings from the Court.  **The Court also found that Attorney Kakol violated Georgia Rule 1.2(c) by limiting the scope of his representation with respect to a creditor claim without the debtor's informed consent.**

---

[108] *See* Order Dismissing Case, *In re Moring*, Ch. 13 Case No. 23-56182-BEM (Bankr. N.D. Ga. Nov. 1, 2023), Dkt. No. 30.

[109] *See* Order of Dismissal and Closing Estate, *In re Phillips*, Ch. 7 Case No. 22-50660-BEM (Bankr. N.D. Ga. Feb. 2, 2024), Dkt. No. 145.

[110] The opinion in this case was published: *In re DaCosta*, Ch. 13 Case No. 22-59912-SMS, 2024 Bankr. LEXIS 266, 2024 WL 422779 (Bankr. N.D. Ga. Feb. 5, 2024).

- Disposition: Attorney Kakol was ordered to pay a $2,500 sanction and his $5,200 attorney's fee to the debtor.

## *In re James Day*, Ch. 13 Case No. 23-52197-JRS[111]

- Facts: Attorney Kakol impermissibly accepted his attorney fee from CMNC Homes, LLC ("CMNC") to file bankruptcy for the debtor when CMNC had the debtor's home under contract to purchase; impermissibly limited his representation of the debtor; impermissibly allowed CMNC to interfere with his professional independence; and impermissibly represented the debtor in the face of a conflict of interest between the debtor and CMNC. Additionally, Attorney Kakol failed to follow Bankruptcy Statutes and Rules such as failing to timely, properly, and accurately file a Rule 2016(b) statement and failing to obtain a written agreement with the debtor for the representation. Lastly, Attorney Kakol violated this Court's General Orders and Local Rules by failing to comply with the Rights and Responsibilities Statement requirement and by failing to comply with the signature requirements for filing a bankruptcy petition.
- Disposition: Attorney Kakol and his law firm were prohibited from filing any new bankruptcy cases in the Northern District of Georgia for one year beginning on April 11, 2024. Additionally, Attorney Kakol and his law firm, effective immediately, were permanently prohibited from filing any new bankruptcy cases in the Northern District of Georgia where Attorney Kakol and his law firm's fees and costs would be paid by a third party.

## *In re Lynn Jon Robertson, Sr.*, Ch. 13 Case No. 23-61014-JWC[112]

- Facts: **Attorney Kakol failed to conduct a reasonable inquiry into the debtor's previous cases and the court records of those cases and failed to obtain any evidence from the**

---

[111] The opinion in this case was published: *Townson v. Kakol* (*In re Day*), Ch. 13 Case No. 23-52197, 2024 Bankr. LEXIS 851, 2024 WL 1506751 (Bankr. N.D. Ga. Apr. 5, 2024). For ease of reading, the facts are not bolded as nearly all of the facts would be bolded.

[112] The opinion in this case was published: *In re Robertson*, Ch. 13 Case No. 23-61014-JWC, 2024 Bankr. LEXIS 1853, 2024 WL 3738155 (Bankr. N.D. Ga. Aug. 8, 2024).

141

**debtor necessary to support the positions Attorney Kakol took in the case.** Attorney Kakol filed the sixth and seventh bankruptcy cases for the debtor, each the day before a scheduled foreclosure on the debtor's home, and listed in the plan in each case an estimated prepetition arrearage of $21,000 for U.S. Bank's lien on the debtor's home when in reality it exceeded $250,000 as evidenced by proof of claims filed by U.S. Bank in the debtor's cases. For the confirmation hearing in the debtor's seventh bankruptcy case, Attorney Kakol sent appearance counsel who could not answer basic question from the Court.  During the hearing on the motion for sanctions against Attorney Kakol, Attorney Kakol took the position that no abuse occurred in the debtor's seventh bankruptcy case, "just very aggressive lawyering on behalf of the Debtor."

- Disposition: Attorney Kakol and his firm were required to disgorge all fees he received in connection with the case to U.S. Bank. Attorney Kakol and his firm were also required to reimburse U.S. Bank for all its attorney's fees and costs incurred in the case in the total amount of $5,090.  Attorney Kakol was required to attend fifteen hours of continuing legal education focused on consumer bankruptcy topics, with at least three of the hours focused on professionalism and/or ethics in bankruptcy. Lastly, Attorney Kakol and his firm were prohibited from using attorneys, associates, or appearance counsel that have failed to review the pleadings filed in a case, or who are otherwise not adequately prepared to represent clients' interests before the Court. If Attorney Kakol and his firm used attorneys, associates, or appearance counsel that were unprepared or unable to properly handle a debtor's business before the Court, Attorney Kakol and his firm would be subject to a $500 sanction for each occurrence.

*In re Robert Leon Benson & Tara Lynn Benson*, Ch. 13 Case No. 26-50381-JWC

- Facts: Attorney Kakol failed to adequately investigate whether two debtors were eligible to file bankruptcy and filed bankruptcy for them during a two-year bar period.

142

- Disposition: Case dismissed with a two-year bar period on refiling bankruptcy, and Attorney Kakol was ordered to return any fees, excluding filing fees, he received from the debtors.[113]

*In re Chicilia L. Moore*, Ch. 13 Case No. 26-54449-BEM

- Facts: Attorney Kakol filed an emergency motion to impose stay which was set for a hearing. About three hours before the hearing on the motion to impose stay, Attorney Kakol's office emailed chambers to announce a consent order with the creditor. However, Attorney Kakol failed to inform his client, and she appeared at the courthouse for the hearing on the motion to impose stay. Attorney Kakol's client told the Court that she had paid for two hours of parking for the hearing on the motion to impose stay. Attorney Kakol also failed to appear for the confirmation hearing for this case.
- Disposition: Attorney Kakol was ordered, within forty-eight hours after the entry of the order, to disgorge $100 to his client from the attorney fees she paid him prepetition. Attorney Kakol also agreed to reduce his attorney fee by $1,000.[114]

## END OF APPENDIX A

---

[113] *See* Order on Trustee's Motion to Dismiss Case for Violation of the Court's Order Barring the Debtors From Filing Any Chapter of Bankruptcy for a Period of 2 Years and to Declare the Automatic Stay Void AB Initio, *In re Benson*, Ch. 13 Case No. 26-50381-JWC (Bankr. N.D. Ga. Apr. 2, 2026), Dkt. No. 27.

[114] *See* Order Directing Debtor's Counsel to Partially Refund Fees, *In re Moore*, Ch. 13 Case No. 26-54449-BEM (Bankr. N.D. Ga. June 24, 2026), Dkt. No. 27.

# APPENDIX B

## SELECTED PORTIONS OF APPLICABLE ABA STANDARDS FOR IMPOSING LAWYER SANCTIONS (A.B.A. 1992)

### 4.0   Violations of Duties Owed to Clients

### 4.2   Failure to Preserve the Client's Confidences

Absent aggravating or mitigating circumstances, upon application of the factors set out in 3.0, the following sanctions are generally appropriate in cases involving improper revelation of information relating to representation of a client:

**4.21**   Disbarment is generally appropriate when a lawyer, with the intent to benefit the lawyer or another, knowingly reveals information relating to representation of a client not otherwise lawfully permitted to be disclosed, and this disclosure causes injury or potential injury to a client.

**4.22**   Suspension is generally appropriate when a lawyer knowingly reveals information relating to the representation of a client not otherwise lawfully permitted to be disclosed, and this disclosure causes injury or potential injury to a client.

### 4.3   Failure to Avoid Conflicts of Interest

Absent aggravating or mitigating circumstances, upon application of the factors set out in Standard 3.0, the following sanctions are generally appropriate in cases involving conflicts of interest:

**4.31**   Disbarment is generally appropriate when a lawyer, without the informed consent of client(s):

**(a)**   engages in representation of a client knowing that the lawyer's interests are adverse to the client's with the

144

intent to benefit the lawyer or another, and causes serious or potentially serious injury to the client; or

**(b)** simultaneously represents clients that the lawyer knows have adverse interests with the intent to benefit the lawyer or another, and causes serious or potentially serious injury to a client; or

**(c)** represents a client in a matter substantially related to a matter in which the interests of a present or former client are materially adverse, and knowingly uses information relating to the representation of a client with the intent to benefit the lawyer or another, and causes serious or potentially serious injury to a client.

**4.32** Suspension is generally appropriate when a lawyer knows of a conflict of interest and does not fully disclose to a client the possible effect of that conflict, and causes injury or potential injury to a client.

## 4.4   Lack of Diligence

Absent aggravating or mitigating circumstances, upon application of the factors set out in Standard 3.0, the following sanctions are generally appropriate in cases involving a failure to act with reasonable diligence and promptness in representing a client:

**4.41** Disbarment is generally appropriate when:

**(a)** a lawyer abandons the practice and causes serious or potentially serious injury to a client; or

**(b)** a lawyer knowingly fails to perform services for a client and causes serious or potentially serious injury to a client; or

**(c)** a lawyer engages in a pattern of neglect with respect to client matters and causes serious or potentially serious injury to a client.

145

**4.42**    Suspension is generally appropriate when:

**(a)**    a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client, or

**(b)**    a lawyer engages in a pattern of neglect causes injury or potential injury to a client.

## 4.6   Lack of Candor

Absent aggravating or mitigating circumstances, on application of the factors set out in Standard 3.0, the following sanctions are generally appropriate in cases where the lawyer engages in fraud, deceit, or misrepresentation directed toward a client:

**4.61**    Disbarment is generally appropriate when a lawyer knowingly deceives a client with the intent to benefit the lawyer or another, and causes serious injury or potential serious injury to a client.

**4.62**    Suspension is generally appropriate when a lawyer knowingly deceives a client, and causes injury or potential injury to the client.

## 6.0   Violations of Duties Owed to the Legal System

## 6.1   False Statements, Fraud, and Misrepresentation

Absent aggravating or mitigating circumstances, upon application of the factors set out in Standard 3.0, the following sanctions are generally appropriate in cases involving conduct that is prejudicial to the administration of justice or that involves dishonesty, fraud, deceit, or misrepresentation to a court:

**6.11**    Disbarment is generally appropriate when a lawyer, with the intent to deceive the court, makes a false statement, submits

146

a false document, or improperly withholds material information, and causes serious or potentially serious injury to a party, or causes a significant or potentially significant adverse effect on the legal proceeding.

**6.12**   Suspension is generally appropriate when a lawyer knows that false statements or documents are being submitted to the court or that material information is improperly being withheld, and takes no remedial action, and causes injury or potential injury to a party to the legal proceeding, or causes an adverse or potentially adverse effect on the legal proceeding.

## 6.2   Abuse of the Legal Process

Absent aggravating or mitigating circumstances, upon application of the factors set out in Standard 3.0, the following sanctions are generally appropriate in cases involving failure to expedite litigation or bring a meritorious claim, or failure to obey any obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists:

**6.21**   Disbarment is generally appropriate when a lawyer knowingly violates a court order or rule with the intent to obtain a benefit for the lawyer or another, and causes serious injury or potentially serious injury to a party or causes serious or potentially serious interference with a legal proceeding.

**6.22**   Suspension is generally appropriate when a lawyer knows that he or she is violating a court order or rule, and causes injury or potential injury to a client or a party, or causes interference or potential interference with a legal proceeding.

### END OF APPENDIX B

147